[Civ. No. 14365. First Dist., Div. One. Dec. 22, 1950.]

W. W. NELSON et al., Appellants, v. ORO LOMA SANITARY DISTRICT OF ALAMEDA COUNTY et al., Respondents.

John F. O'Sullivan for Appellants.

Kirkbride, Wilson, Harzfeld & Wallace for Respondents.

BRAY, J.—In a representative action for declaratory relief to declare void a reassessment levied, and to enjoin the issuance of bonds thereon by defendant sanitary district, the court held the reassessment and bonds valid. Plaintiffs appeal from the judgment in favor of defendants.

### QUESTION PRESENTED

The primary question is whether the trial court and this court may go behind the board's finding of jurisdiction to make the reassessment.

### FACTS

In 1945, the district, in order to acquire rights of way and construct certain storm drainage work and improvements, levied an assessment of $118,501.86 against the property of plaintiffs and approximately five hundred other landowners within a special assessment district. Of this sum, $12,720.64 was paid in cash and the balance, $105,781.82 was raised by

the issuance of bonds. The assessment was levied and the bonds issued under the provisions of the Municipal Improvement Act of 1913, Act 5215, Deering's General Laws. Contracts were let for the doing of the work. As frequently happens in public work, the cost of the project exceeded the estimates and the amount raised by the assessment. It is unnecessary to detail the reasons. The district paid out of its general fund the sum of $71,084.55 over and above the amount of the assessment. To recover this amount for its general fund the district made the reassessment under attack here. This reassessment was made pursuant to section 18 of the 1913 act. No attack is made on the regularity of the reassessment proceedings so far as the mechanical steps and procedures required are concerned. It is claimed, however, that the reassessment is void as the board had no jurisdiction to levy a reassessment for the reason that the original assessment proceedings were valid. The trial court found the reassessment valid and that bonds might be issued thereon; that the amounts of the reassessment were not arbitrary, discriminatory or unfair; that plaintiffs are barred from obtaining relief because of failure to appear and protest at the reassessment hearings; that this action is barred by sections 6 and 18 of the Municipal Improvement Act of 1913.

### APPLICABLE SECTIONS OF IMPROVEMENT ACTS

Section 18 of the 1913 act provides that the original assessment shall be recorded in the office of the district engineer of the district "in the manner and with like force and effect as provided in the Improvement Act of 1911 and the Improvement Bond Act of 1915, and the assessment therefor shall have the priority, and *the proceedings shall be subject to all of the curative clauses and powers of reassessments, provided in those acts. . . .*" (Emphasis added.) Pursuant to this section the district followed the reassessment provisions of the 1911 and 1915 acts as they then existed. The Improvement Acts of 1911 and 1915 have been incorporated into the Streets and Highways Code.* Some of the pertinent portions follow: Section 5500 provides: "If any assessment heretofore or hereafter made, issued or filed in the office of the clerk is void or unenforceable for any cause or if bonds have been or are issued to represent or be secured by any assessments and such issuance was or is not effective through the curative provi-

---

*The 1911 act is found in sections 5000 through 6794, Streets and Highways Code; the 1915 act in sections 8500 through 8851.

sions in relation thereto, or any curative act that may be passed by the Legislature in relation thereto to make them valid and enforceable, then, in any of such events a reassessment therefor may be issued." Section 5501 provides: "The true intent and meaning of this chapter is to make the cost and expense of any work made through an attempted compliance with this division payable by the real estate benefited by such work by making a reassessment therefor." Section 5502 will be discussed later. Then follow sections setting forth the reassessment proceedings. Section 5366 provides for an appeal by any interested person to the district board from a reassessment. (While it does not specifically refer to reassessments, it includes them.) Section 5367 authorizes the board upon such appeal to correct or amend the assessment in any particular. Section 5368 provides: "All the decisions and determinations of the legislative body, upon notice and hearing as aforesaid, shall be final and conclusive upon all persons entitled to appeal to the legislative body, as to all errors, informalities, and irregularities which the legislative body might have avoided, or have remedied during the progress of the proceedings or which it can at that time remedy."

If bonds are to be issued upon an assessment and after notice is given and a hearing had of protests, section 8596 provides: "If at the hearing the legislative body determines that any assessment is void and unenforceable, it shall order a reassessment. . . ."

Section 8702 is practically identical with section 5500 except that the last sentence of section 8702 does not appear in section 5500. That sentence reads: "The reassessment shall be made upon the demand of the owner or holder of bonds aggregating one-third of the principal amount outstanding and shall be made in the manner and form provided by the law pursuant to which the work was done."

## . JURISDICTION OF BOARD

■ In resolution 354, entitled "Directing Making of Reassessment," the board found that the original assessment and bonds issued thereon were irregularly levied and unenforceable. Plaintiffs contend that the record of the original assessment proceedings shows on its face that the assessment and the bonds issued thereon were valid and enforceable, and hence the board did not have jurisdiction to make a reassessment. (The trial court found the particular steps taken by the board in the original assessment proceedings, but made

no finding as to their validity.) Defendants contend that the board's finding of jurisdiction is final and conclusive in a collateral attack of this kind, particularly against one who failed to protest the reassessment proceedings. Thus, we are required to decide whether in the absence of allegations of fraud or arbitrary action, the courts in a collateral attack may go behind the jurisdictional finding of the board. The authorities hold that the courts may not do so. The early case of *People* v. *Hagar*, 52 Cal. 171, was an action to collect an assessment levied by a swamp land district. In upholding the trial court in striking from the answers of the property owners who were contesting the assessments, certain denials of facts found by the board of supervisors in establishing the district, which facts the superior court found to be jurisdictional, the latter court stated that it was the duty of the board to pass upon these facts and having done so its judgment is conclusive, stating (p. 183) : "These were jurisdictional facts which the Board necessarily determined in approving the petition, and its action is not open to attack in a collateral action. 'Whenever the jurisdiction of a Court not of record depends on a fact which the Court is required to ascertain and settle by its decision, such decision, if the Court has jurisdiction of the parties, is conclusive, and not subject to any collateral attack.' (Freeman on Judgments, sec. 523; Bigelow on Estoppel, p. 142.)" This rule was followed in *Spaulding* v. *North San Francisco Homestead etc. Assn.*, 87 Cal. 40 [24 P. 600, 25 P. 249], in an action brought by an assignee of a street contractor against a property owner to recover the amount of an assessment for the grading of a street under the act of April 1, 1872. That act provided that no grading could be ordered by the supervisors unless a majority of the frontage of lots fronting on the proposed work was represented in the petition. The petition upon which the board acted was uncertain on its face as to whether a majority of the frontage was so represented. At the trial, the defendant offered to prove that the fact was that a majority were not represented. The trial court refused to admit the proof. On appeal, it was held that the action was proper ; that in spite of the uncertainty of the allegations of the petition it was sufficient to give the board of supervisors jurisdiction to act upon it, and the determination by the board of the jurisdictional facts is conclusive against collateral attack. The court then refers to a provision in the act pro-

viding a method for property owners to object and that the action of the board thereon " 'shall be final and conclusive.'

"This provision is intended to enable parties in interest to reach any irregularity or defect in the petition itself, or matter connected with the granting of it, and to be their only remedy. There is no evidence here that appellant ever availed itself of the opportunity thus given to be heard. It therefore waived all objections to the form of and the granting of the petition." (P. 46.) This holding is important in our case because of similar provisions in the three acts involved.

In *People* v. *Los Angeles*, 133 Cal. 338 [65 P. 749], an action in quo warranto was brought to declare void the proceedings of the city council in annexing certain territory to the city. It was contended that the petition for annexation was not signed by the requisite number of electors. The court held that the jurisdiction of the council to act depended upon the petition being signed by the requisite number of electors; that this was a question of fact to be determined by the council, and its determination was conclusive, saying (p. 342): " 'An inferior board may determine conclusively its own jurisdiction or power, by adjudicating the existence of *facts*, upon the existence of which its jurisdiction or power depends. . . .' "

A case directly in point is *Godber* v. *City of Pasadena*, 206 Cal. 90 [273 P. 30]. There the city levied an assessment under the procedure provided by the 1903 Street Opening Act. It later passed a resolution declaring the assessment invalid and proceeded to make a reassessment. Plaintiff, a property owner affected, sought to enjoin the enforcement of the reassessment on the ground (the same as here) that the first assessment was a valid one. After pointing out a provision in the 1903 act (similar to provisions in the acts involved here) to the effect that the confirmation of the reassessment by the city council " 'shall be a final determination of all matters relating to the actual benefits derived or to be derived from the improvement by the respective lots . . .' " the court said: "Appellant seems to overlook the fact that the court may take only a restricted view of the action of the city directors. We are required to look, therefore, upon the last action of the board with the same complacency that we would have looked upon the first assessment had there been no attempt to rescind it. The rules of law which guide the court in a proceeding of this character are well settled and are relied upon by both parties. The controlling principle, in a word, is that every

intendment must be indulged that can be in favor of the final action of the city directors and all doubts resolved in favor of the validity of the action so taken. The court will not hear the opinions of witnesses and other evidence in any subsequent issue involving the assessment in order to determine whether or not it can plainly see that the action taken by the municipality was or was not correct, but the court can only view such facts as appear on the record of the proceedings taken in the light of those further facts of which we may take judicial notice [Citations]." (P. 93.)

Plaintiffs mainly rely on two cases, one of which is *In re Madera Irrigation Dist.*, 92 Cal. 296 [28 P. 272, 675, 27 Am.St.Rep. 106, 14 L.R.A. 755]. There, the board of directors of the Madera Irrigation District filed in the superior court a petition for confirmation of their proceedings for the issue and sale of certain bonds of the district. That court confirmed the legality of the proceedings and bonds. Certain property owners appealed, contending, among other things, (1) that the bond required to accompany the petition for the formation of the district was so defective as to deprive the board of supervisors of jurisdiction to proceed. As to this the court said (p. 329): "The bond which was presented, although informal, was not invalid, and was of binding obligation upon those who had signed it. In such a case the determination of its sufficiency by the board of supervisors was as conclusive as their determination respecting the pecuniary responsibility of its signers, or the amount for which the bond should be given." Plaintiffs can derive no comfort from this holding. (2) That the superior court did not require the district to prove that the petition for formation of the district was signed by the requisite number of property owners, but allowed in evidence the record of the board's proceedings which contained a finding to that effect and refused to permit the introduction in evidence of the petition itself. The Supreme Court held that this action of the trial court was error, stating (p. 332): "Whether a petition had been presented to the board of supervisors of such a character as to give to that board jurisdiction to act in accordance with the provisions of the law in question, was an issue before the court to be determined by competent evidence. A declaration by the board of supervisors that such a petition had been presented, even though such declaration was spread upon their records was not competent evidence in this proceeding as it was only hearsay. No board or tribunal can obtain jurisdiction by its own

recital that it has jurisdiction.'' However, the action in that case was a direct attack on the action of the board where here it is a collateral attack. The proceedings there were under the act of 1889 which expressly declared that the court alone (and not the board as in our case) should have power and jurisdiction to examine and determine the validity of all proceedings. The court further stated that this was not a collateral proceeding but a direct attack and compared it to a quo warranto proceeding in holding that the burden was on the district to prove the validity of its organization. The court expressly recognized the fact that the rule might be different in a collateral proceeding by saying (p. 332): ''It may be held that when the question of such jurisdiction arises in some collateral proceeding, the act of the board in recognition of the sufficiency of the petition would be presumptive of such sufficiency. . . .''

The other case mainly relied on by plaintiffs is *Raisch Imp. Co. v. Bonslett,* 28 Cal.App. 649 [153 P. 747] (Supreme Court denied a hearing). In 1910 the board of trustees of the town of Antioch, under the provisions of section 20 of the Vrooman Act, passed an ordinance accepting certain streets after their improvement under that act. Section 20 provided, in effect, that whenever any street had been constructed in a certain manner and had sewer, gas pipes and water pipes laid therein, such street could be accepted by the council by ordinance. The ordinance recited that gas pipes had been laid in the streets in question. It was an admitted fact in the case that the gas pipes had not been laid. In 1914 the board passed another ordinance stating that the recital in the 1910 ordinance was untrue and therefore the board was without jurisdiction to pass an ordinance accepting said streets, and repealed said ordinance. The board then initiated certain proceedings for the improvement of some of the streets mentioned in the 1910 ordinance. Under these proceedings a contract for doing the work was awarded to petitioner. Respondent superintendent of streets refused to sign the contract, basing his refusal upon the ground that having accepted the streets in the 1910 ordinance the board was without jurisdiction to order another improvement of the streets at the property owners' expense. Petitioner then sought a writ of mandate to compel him to sign. The court stated that the only question was the validity of the 1910 ordinance; that the jurisdiction of municipalities to improve streets at the property owners' expense was a limited one and under section 20 of the Vrooman Act required that

gas pipes be actually laid in a street before the city could accept it.* In answer to the respondent's contention that the courts are bound by the recital in the ordinance the court relied upon the statement in *In re Madera Irrigation District, supra* (92 Cal. 296): "No board or tribunal can properly obtain jurisdiction by its own recital that it has jurisdiction." But, as pointed out in *People* v. *Los Angeles, supra,* p. 343 (133 Cal. 338), the situation in the *In re Madera* case was a peculiar one. There the act under which the proceedings to confirm the district's bonds was brought provided "that 'the court shall have power and jurisdiction to examine and determine the legality and validity of . . . each and all the proceedings for the organization of said district, . . . from and including *the petition for the organization of the district.'* " (Emphasis added.) The court there found that the petition was not signed by a majority as the law required. Thus it appears that the *In re Madera* proceeding was a *direct* attack on the proceedings and the language concerning jurisdiction was proper. "The proceeding was special, and was so declared by the act." (*People* v. *Los Angeles, supra,* at p. 343 [133 Cal. 338].) Hence the court in the Raisch case considered the attack on the ordinance as a *direct* and not a *collateral* attack. An examination of the cases in California concerning the finality of the findings of tribunals of the type here shows that it is only where the lack of jurisdiction appears on the face of the proceedings that a collateral attack may be made, as, for example, where the record shows that the statutory notice of a required hearing has not been given. The word jurisdiction is a much misused one. These tribunals have jurisdiction of the proceedings if the statutory steps have been taken, and then have the authority to pass upon the facts requisite to support the final action taken. If the board makes a wrong determination of those facts, the remedy is by a direct appeal from that determination. In many cases, as in the acts involved here, an appeal to the board is provided, and in all cases, of course, there may be a direct appeal to the courts. In our case, plaintiffs did not avail themselves of either remedy, nor did they appear at the board hearings. An examination of the various acts involved shows that it was the intention of the Legislature to make the board's action as to the determination of facts final. Thus under the 1911 act a hearing

---

*The act provided for an alternative not applicable to the facts of the case.

on the reassessment must be had, and notice thereof given. Section 5501 states: "The true intent and meaning of this chapter is to make the cost and expense of any work made through an attempted compliance with this division payable by the real estate benefited by such work by making a reassessment therefor." Section 5003 provides: "This division shall be liberally construed in order to effectuate its purposes. No error, irregularity, informality, and no neglect or omission of any officer, in any procedure taken under this division, which does not directly affect the jurisdiction of the legislative body to order the work or improvement, shall avoid or invalidate such proceeding or any assessment for the cost of work done thereunder. The exclusive remedy of any person affected or aggrieved thereby shall be by appeal to the legislative body in accordance with the provisions of this division." Section 8620 of the 1915 act which provides the procedure for issuance of the bonds provides: "All of the decisions and determinations of the legislative body upon the objections and matters submitted at the hearing, shall be final and conclusive upon all persons who were entitled to appear at the hearing." Section 8594 provides that any owner of property affected by the assessment may appear and "set forth his objections, or any reason which he may have why bonds should not be issued upon the security of the unpaid assessments. He may show any act or determination done or made in the proceeding whereby he is aggrieved and any act or thing done in the proceeding which may be irregular, defective, erroneous or faulty, and may set forth what assessments are unpaid and what assessments have been paid. *If he claims that the legislative body does not have jurisdiction to issue the bonds he shall set forth the ground upon which his contention is made.*" (Emphasis added.)

While, of course, jurisdiction in the strict sense cannot be obtained by a mere recital, it is apparent from the above sections that the Legislature intended the board's determination to be final. As said in *People* v. *Los Angeles, supra,* at p. 342 (133 Cal. 338), in quoting from Wells on Jurisdiction, section 61: " 'Where the jurisdiction of even an inferior court is dependent on a fact which that court is required to ascertain and settle by its decision, such decision is held conclusive.' " See, also, *Godber* v. *City of Pasadena, supra* (206 Cal. 90). The language in 19 California Jurisprudence, page 221, although referring to other street improvement acts, applies here: "Upon the hearing, the council sits as a quasi-

court of appeal, and may confirm, modify or correct the assessment or it may order a new assessment. Action by the council is final and conclusive, unless it be shown that the council refused to decide, upon the merits, objections urged against an assessment, and, instead thereof, willfully based its order upon illegal considerations which were inconsistent with making an assessment in proportion to benefits to be derived from the improvement, and which in effect amounted to fraud upon the rights of the property owners.''

It must be pointed out that the finality of the board's findings may be questioned where it is directly charged that its action was the result of fraud. (See *Cake* v. *City of Los Angeles*, 164 Cal. 705 [130 P. 723].) Here there is no such charge in the complaint. Plaintiffs contend that some of the language of their complaint indicates such a charge. However, an examination of the complaint discloses a complete absence of the particularity of allegations of fraud which the law requires, and which are necessary in order that the trial court might find on the subject.

### Prior Proceedings

Plaintiffs contend that the trial court found that the prior proceedings were valid. The court found the steps taken by the board in the original assessment proceedings. However, it did not find that these steps constituted a valid assessment proceeding. Assuming, however, that the findings could be interpreted as plaintiffs interpret them, they do not change the situation for the reason, as pointed out before, that the court had no power to go behind the finding of the board that those proceedings were invalid.

### Conditions for Reassessment

In interpreting the reassessment provisions, plaintiffs contend, in effect, that a board has no authority to make a reassessment unless (1) a court has found that the assessment proceedings are invalid or unenforceable, or (2) that a demand for reassessment has been made by property owners or bondholders. This contention is based upon the fact that in some of the provisions for reassessment it is provided that reassessments *shall* be made in the above contingencies. However, the right to make the reassessment is not confined exclusively to those situations. Section 8702 provides that if any assessment is void or unenforceable for any cause, or if the issuance of bonds thereon is not effective through the curative provisions

to make them valid and enforceable, then a reassessment *may* be made. It *shall* be made upon the demand of one-third of the bondholders. Section 5500 provides that if the assessment is void or unenforceable or if the issuance of bonds is ineffectual a reassessment *may* be issued. Section 5501 then sets forth that the true intent of the chapter is to make the cost of any work through an attempted compliance with the provisions of the division payable by the real estate benefited by the work by making a reassessment therefor. Section 5502 (one of the sections upon which plaintiffs rely for their contention) provides that a reassessment *shall* be made (1) on the request of certain bondholders; (2) when a court has declared the assessment or bonds, or the lien thereof, or the contract for doing the work, void or unenforceable. ■■ It is obvious from a reading of the above sections that in providing that a reassessment *shall* be made on the demand of bondholders or in the event of an adverse court decision, the Legislature did not intend to deprive the board of the right on its own motion under the authority granted by the sections stating that reassessment *may* be made, to make such reassessment. *Gray* v. *Lucas,* 115 Cal. 430 [47 P. 354], and *Westall* v. *Altschul,* 126 Cal. 164 [58 P. 458], cited by plaintiffs, are not in point. In both cases the court was considering street improvement acts which confined the right of reassessment to a situation where a court had first determined the original assessments to be illegal.

## COST OF WORK

■■ The $71,084.55 for which the reassessment was made exceeded to that extent the original estimate for doing the work. Likewise, some of the costs incurred were not included in the original specifications. Plaintiffs contend that nothing can be included in the reassessment that was not in the original estimate for doing the work or in the specifications. Under present conditions, to hold that a reassessment cannot be made for the cost in excess of the original estimate would practically prohibit the doing of any public work. In the face of ever changing costs of labor and materials, it is almost impossible to estimate accurately the cost of a particular improvement. Moreover, unforeseen difficulties frequently arise in the doing of the work, and changes must be made in the specifications. Undoubtedly the Legislature had this in mind when it enacted section 5501 making the cost and expense of the work payable by the real estate benefited. The basis of the reassessment is the existence of a completed work. (See *Cowart* v. *Union*

*Paving Co.,* 216 Cal. 375, 382 [14 P.2d 764].) Moreover, as to the items considered in making the reassessment, plaintiffs' exclusive remedy is "by appeal to the legislative body in accordance with the provisions of this division." (§ 5003.) (See §§ 5368, 8620.)

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.