[Civ. No. 19566.   First Dist., Div. Two.   Nov. 23, 1960.]

BOARD OF PERMIT APPEALS OF THE CITY AND
COUNTY OF SAN FRANCISCO et al., Petitioners, v.
CENTRAL PERMIT BUREAU OF THE CITY AND
COUNTY OF SAN FRANCISCO et al., Respondents.

634

Philip S. Ehrlich and Irving Rovens for Petitioners.

Dion R. Holm, City Attorney, Michael B. Foley and George E. Baglin, Deputy City Attorneys, for Respondents.

KAUFMAN, P. J.—Petitioners, board of permit appeals, and Hilton Hotels Corporation (Hilton), real party in interest, seek mandate to compel respondents, central permit bureau and Owens, Director of Public Works, and principal official of the central permit bureau, to grant petitioner,

Hilton, a building permit in order to proceed with construction of a large commercial hotel in the city and county of San Francisco, pursuant to Building Code of the City and County of San Francisco, sections 301, 302 and 304, and section 39 of the Charter of the City and County of San Francisco.

<h2 style="text-align:center">FACTS</h2>

Petitioner, Hilton Hotel Corporation (Hilton), is the owner of certain real property located in the city and county of San Francisco. Petitioner Hilton desires to erect a large commercial hotel thereon. Pursuant to Building Code of the City and County of San Francisco, sections 301, 302 and 304, which define the procedural steps to be taken, petitioner, Hilton, on February 2, 1960, sought to obtain a building permit from respondent, central permit bureau. The building permit was denied on May 26, 1960, in that the superintendent of the bureau of building and inspection had disapproved the plans and specifications submitted. The apparent basis for the denial to issue the permit was the opinion of the bureau of building inspection and the central permit bureau that certain structural features in the proposed plans were inadequate to comply with certain city ordinances relative to the fire prevention, protection and control.

Petitioner, Hilton, subsequently appealed to petitioner, board of permit appeals, a five-member panel, the function and authority of which are more fully set forth below. The board of permit appeals overruled the respondent, central permit bureau, unanimously and approved the plans submitted by petitioner, Hilton, subject to a stipulation that Hilton install one ''Denver-type'' smoke-proof enclosure among the other fire protection structures included in the plans submitted. The board acted after full hearings upon the question and issued its order overruling the action of the central permit bureau and directing respondent to grant the building permit.

Respondent, Owens, sought a rehearing upon the appeal. Rehearing was granted and again the board of permit appeals ordered the permit granted, affirming its prior order by a vote of four members, one being absent.

Petitioner, Hilton, after conforming to the stipulation above mentioned again sought the building permit. Respondents, Owens and the central permit bureau, refused the

issuance. The refusal of respondents to comply with the decision of the board forms the basis of this petition.

The controversy centers about certain structural requirements or standards for fire control in buildings of the size petitioner, Hilton, proposes to erect.

Under the State Housing Act (Health & Saf. Code, §§ 15000-19999), local building codes must impose building safety standards and requirements equal to or higher than those set under the act (see Health & Saf. Code, §§ 15153, 19825).

Sections 16401, 16405, 16501, 16670, 16679 of the Health and Safety Code require that a hotel of the size proposed, have either five interior enclosed stairways and six outside fire escapes *or* five smoke-proof towers (designated as "type 4" in Health & Saf. Code, §§ 16670-16679). San Francisco Building Code, section 2109(b), and San Francisco Housing Code, section 1109, require at least one smoke-proof tower to be included in hotels of the size proposed.

Smoke-proof towers are adequate substitutes for either the enclosed stairway or conventional outside galvanized metal fire escapes (see Health & Saf. Code, §§ 16504, 16720, 16720.5).

Therefore, in San Francisco, hotels of the size proposed are required to contain four interior enclosed stairways, a smoke-proof tower and six outside fire escapes *or* five smoke-proof towers. Such standards would be designated as minimum under San Francisco Building Code, section 106.

Smoke-proof towers are permanent stairways constructed on the exterior walls of the building that may be entered by means of a balcony or vestibule at each floor. The structures are open to the outer air and terminate with an opening at street level. (Health & Saf. Code, §§ 16671, 16675, 16677.)

By virtue of the stipulation above, the proposed Hilton structure contains four enclosed stairways and one exterior galvanized metal fire escape. One of the enclosed stairways is to be of the "Denver-type" smoke-proof enclosure.

The "Denver" smoke-proof enclosure is apparently a recent innovation in structural fire escape design. It is an interior, enclosed stairway with an adjoining vestibule providing egress from the hotel corridor to the stairway. The structure is equipped with a sheet-metal smoke exhaust duct, with openings at each vestibule, and a power driven fan at roof level. The fan, in the event power is shut off or fails, is to be free-wheeling and thus operates with draft.

Neither the state nor local building codes mention the

"Denver-type" structures. The Building Code of the City and County of San Francisco contains a section which permits deviation from standards set by that code. Section 106 of the code reads in part:

"Interpretation. It is the declared intention of this Code to define *minimum standards of construction* which shall produce safe structures. No provisions of this Code, are intended to prevent the use of any material, appliance, installation, device, arrangement, or method of construction not specifically prescribed herein, provided such alternate has been approved.

"The Superintendent may approve any such alternate if he finds that the proposed design satisfies structural and other Code requirements and that the material, appliance, installation, device, arrangement, method or work offered is, for the purpose intended, obviously equivalent or better in quality, strength, effectiveness, fire resistance, durability, safety, and for the protection of life and health, than that called for by provisions of this Code."

Section 106 of the Housing Code of the City and County of San Francisco also permits deviation from the standards set by the code and reads in part:

"Alternate materials, etc. The provisions of this Code are not intended to prevent the use of any material, appliance, installation, device, arrangement, or method of construction not specifically prescribed by this Code, provided any such alternate has been approved.

"The Superintendent may approve any such alternate if he finds that the proposed design is satisfactory and that the material, appliance, installation, device, arrangement, method, or work offered is, for the purpose intended, at least the equivalent of that prescribed in this Code in quality, strength, effectiveness, fire resistance, durability, safety and for the protection of life and health."

Also, the question arises: May a local board vary from standards prescribed by state statute?

The state Health and Safety Code provides:

Section 15159. "The provisions of this part are not intended to prevent the use of any material, appliance, installation, device, arrangement, or method of construction not specifically prescribed by this part, provided any such alternate has been approved.

"The building department may approve any such alternate

if it finds that the proposed design is satisfactory and that the material, appliance, installation, device, arrangement, method, or work offered is, for the purpose intended, at least the equivalent of that prescribed in this part in quality, strength, effectiveness, fire resistance, durability, safety and for the protection of life and health.

"The building department may require that sufficient evidence or proof be submitted to substantiate any claims that may be made regarding its use." (Added Stats. 1951, ch. 1127, p. 2892, § 7.)

Section 15007. " 'Building department' means the officer, department, or agency of a city or county charged with the enforcement of the provisions of this part pertaining to the erection, construction, reconstruction, movement, conversion, alteration, or arrangement of buildings or structures within the city or county." (Stats. 1939, ch. 60, p. 873, § 15007.)

The above-quoted sections grant local boards the power to depart from designated minimum standards set by the state.

Even without the above-quoted code sections, the power to depart from designated code standards set by the state is implicit in the case law quoted herein.

The state defines certain minimum standards and requires that municipalities meet or exceed such standards (see Health & Saf. Code, §§ 15152 and 15153). ". . . the fact that certain action is taken raises the presumption that the existence of the necessary facts had been ascertained and found [citations], and likewise carries the implicit principle that such 'necessary facts' are those required by the applicable standards which guided the board. . . ." (*City & County of San Francisco* v. *Superior Court,* 53 Cal.2d 236, 251 [1 Cal.Rptr. 158, 347 P.2d 294]) in its action.

The standards which guide the board are set forth in the state code. The facts which are necessary to the action of the board are presumed found and those facts are such as are presumed necessary to satisfy the standards required. As above stated, the standards required are those set by state code, therefore, the facts found are presumed to satisfy the state code requirement.

We conclude that by municipal code, state statute and case law, by presumption, the requirements of the state code are satisfied by the variance from standards by local agencies, when an unknown quantity (Denver-type) exists and has been ascertained by the local agency to have equivalent or superior properties.

The board of permit appeals has appellate power granted by the charter over the San Francisco Central Permit Bureau which issues building permits. There is no requirement to get a permit from any state agency; therefore, the board of permit appeals under the charter has power to determine whether minimum requirements under state law and city ordinances have been met.

Petitioner, board of permit appeals, found the fire safety complex under the stipulation an adequate and "probably preferable substitute" to the use of smoke-proof towers.

Respondents contend the proposed plans do not fall within the requirements set by the above mentioned code sections and therefore cannot be adequate substitutes.

## Issue

1. Did the petitioner, board of permit appeals, abuse its discretion in overruling the denial of respondent, central permit bureau, to issue Hilton a building permit in that the board acted in clear violation of the applicable ordinances?

"San Francisco is a charter city . . ." (*Lindell Co.* v. *Board of Permit Appeals*, 23 Cal.2d 303, 310 [144 P.2d 4]). "The administrative plan for the government of the city and county of San Francisco, . . . includes the setting up of a comprehensive system of express standards regulating the use of land and the construction of buildings thereon. To administer the regulations imposing such standards the charter directly and through implementing ordinances creates a central permit bureau. One of the agencies functioning with or as a part of that bureau . . . is the board of permit appeals." (*City & County of San Francisco* v. *Superior Court,* 53 Cal.2d 236, 245-246 [1 Cal.Rptr. 158, 347 P.2d 294].)

". . . Section 39 of the San Francisco Charter creates the Board of Permit Appeals as the reviewing agency here concerned and defines its powers, duties and jurisdiction. . . ." (*Lindell Co.* v. *Board of Permit Appeals, supra,* at p. 313.)

Section 39 of the charter reads in part as follows: "The mayor shall appoint five qualified electors, other than city and county officials or employees, for terms of four years, to constitute a board of permit appeals . . .

"Any applicant for a permit or license who is denied such permit or license by the department authorized to issue same, or whose license or permit is ordered revoked by any department, or any person who deems that his interest or prop-

erty or that the general public interest will be adversely affected as the result of operations authorized by or under any permit or license granted or issued by any department, may appeal to the board of permit appeals. Such board shall hear the applicant, the permit-holder, or other interested parties, as well as the head or representative of the department issuing or refusing to issue such license or permit, or ordering the revocation of same. After such hearing and such further investigation as the board may deem necessary, it may concur in the action of the department authorized to issue such license or permit, or, by the vote of four members, may overrule the action of such department and order that the permit or license be granted, restored or refused.''

The board has, under the charter, thus been granted appellate jurisdiction, and like the central permit bureau in its original consideration of the case, is empowered to exercise full discretion in passing upon the matters submitted for decision (see *Lindell, supra,* at pp. 313 and 314).

Decisions of the board are not limited to a restricted review of the proceedings held by subordinate agencies. On the contrary, the board is empowered to review all aspects of the decisions of its subordinate agencies. ". . . It may be a hybrid tribunal . . . but its jurisdiction over designated matters is broad. It may hear appeals upon the record; it may try the cause de novo or it may make its own investigation and its own independent order based thereon. . . .'' (*Greif* v. *Dullea,* 66 Cal.App.2d 986, 998 [153 P.2d 581].)

The board of permit appeals is thus invested with ". . . complete power to hear and determine the entire controversy, [is] free to draw its own conclusions from the conflicting evidence before it and, in the exercise of its independent judgment in the matter, affirm or overrule the action of the Central Permit Bureau.'' (*Lindell Co.* v. *Board of Permit Appeals, supra,* at p. 315.)

It is clear that the board proceeded to act in the precise manner permitted under the charter and above cited cases. The hearings were complete and respondents presented their views. There can be no doubt that the board of permit appeals is bound by the relevant law as enunciated by appropriate ordinances (see *City & County of San Francisco* v. *Superior Court,* 53 Cal.2d 236, 250-251 [1 Cal.Rptr. 158, 347 P.2d 294]).

The above cited ordinances and statutes require certain fire safety structures to meet the minimum requirements for health and safety consonant with the welfare of the general

public (San Francisco Housing Code, § 106).     However, the specifically enumerated safety devices and structures and combinations thereof cannot be reasonably said to be the only possible ones permissible under the codes. The municipal legislators foresaw progress and improvements in the fields of construction and fire prevention and wisely provided therefor by the enactment of section 106 of both the Housing and Building Codes of the City and County of San Francisco, set forth above. In view of constant changes and increase in technical knowledge, no table of alternatives could or should be set forth with rigid specificity. Instead, provisions were made for substitution when more desirable alternatives became known. Substitutability, based upon equivalence or superiority, in a field so susceptible to innovation, variance and change can only be left to the sound discretion of those upon whom the decisions devolve.

The final decision in matters concerning the issuance of building permits devolves upon the board of permit appeals, which hears and determines the entire issue and then acts upon its own independent judgment in its sound discretion consonant with broad public interest. (See *Lindell Co.* v. *Board of Permit Appeals, supra,* at p. 323; *Greif* v. *Dullea, supra,* at p. 998, and *City & County of San Francisco* v. *Superior Court, supra,* at p. 250-251.)

It is apparent from the record before the court that after hearings and upon evidence there adduced, the board considered a scheme of fire safety consisting of three interior enclosed stairways, one outside galvanized metal fire escape and one "Denver-type" structure to be equal to or superior to the combination of fire safety structures set forth in the state and local building codes as minimum requirements. The "Denver-type" structure is recent and not mentioned in the codes. It has technical aspects (fan and smoke exhaust funnel) which differ from the recognized devices. It cannot be said as a matter of law that a combination of fire safety structures which includes such a device is either more or less suitable as an alternative to the prescribed minimum of five smoke-proof towers or five enclosed stairways, one of which is a smoke-proof tower, and six exterior fire escapes. For ought that appears, the combination offered by the stipulation may be superior to many smoke-proof towers or any of a number of combinations possible to suit the minimum requirements under the building codes.

However, it is not for this court to determine whether such equivalence or superiority in structure exists as a fact necessary to the conclusion of substitutability implicit in the order of the board and explicit in sections 15 and 16 of that order.

In connection with the action of an administrative board, and specifically the petitioner board of permit appeals, ". . . the fact that certain action is taken raises the presumption that the existence of the necessary facts had been ascertained and found (see *Atchison etc. Ry. Co.* v. *Kings County Water Dist.* (1956), 47 Cal.2d 140, 144 [3] [302 P.2d 1]; *Bailey* v. *County of Los Angeles* (1956), 46 Cal.2d 132, 136 [1] [293 P.2d 449]; *Swars* v. *Council of City of Vallejo* (1949), 33 Cal.2d 867, 872 [4] [206 P.2d 355]; *Miller* v. *Planning Commission* (1956), 138 Cal.App.2d 598, 603 [2] [292 P.2d 278]; *Cantrell* v. *Board of Supervisors* (1948), 87 Cal.App.2d 471, 479 [197 P.2d 218]), and likewise carries the implicit principle that such 'necessary facts' are those required by the applicable standards which guided the board and by which the action of all inferior as well as higher tribunals is similarly guided." (*City & County of San Francisco* v. *Superior Court*, 53 Cal.2d 236, 251 [1 Cal.Rptr. 158, 347 P.2d 294].)

Here, as in *City & County, supra,* and the Lindell case, *supra,* the board of permit appeals held full hearings upon the issue and received expert testimony. A rehearing was granted after which the order was affirmed. Therefore, a presumption arises that the existence of facts necessary to support the conclusion of equivalence or superiority of the fire safety devices or structures, based upon the standards prescribed by the applicable statutes and ordinances, interpreted and administered to promote public health, safety, comfort, convenience and general welfare, had been ascertained and found. (See *City & County of San Francisco* v. *Superior Court, supra,* at p. 252, and *Lindell Co.* v. *Board of Permit Appeals,* 23 Cal.2d 303, 323 [144 P.2d 4]). In view of the above, it cannot be said that petitioner board acted beyond its jurisdiction or in abuse of discretion.

It follows from the foregoing that the respondent, central permit bureau, as an inferior agency to the appellate board of permit appeals, having received a valid order from the board overruling its decision, possessed no more discretion in the matter and was required to issue the building permit as directed. The act required of respondent, central permit

bureau, had, by virtue of the order of the board of permit appeals, become merely ministerial under Building Code of the City and County of San Francisco, section 304, as modified by charter section 39, and thus may be properly compelled by a writ of mandate (see *Leftridge* v. *City of Sacramento,* 59 Cal.App.2d 516 [139 P.2d 112]; *City of Mill Valley* v. *Saxton,* 41 Cal.App.2d 290, 297 [106 P.2d 455]; *National Automobile, etc. Co.* v. *Garrison,* 76 Cal.App.2d 415 [173 P.2d 67]).

Let a peremptory writ of mandate issue, directing respondents, central permit bureau and Owens, to issue petitioner, and real party in interest, Hilton Hotels Corporation, a building permit according to the provisions of Building Code of the City and County of San Francisco, sections 301, 302 and 304, and Charter of the City and County of San Francisco, section 39, pursuant to and in accordance with the order of the board of permit appeals of August 24, 1960.

Shoemaker, J., concurred.

Draper, J., concurred in the judgment.

A petition for a rehearing was denied December 7, 1960, and respondents' petition for a hearing by the Supreme Court was denied December 21, 1960.