[Civ. No. 27369. First Dist., Div. One. Feb. 9, 1972.]

CITY AND COUNTY OF SAN FRANCISCO, Plaintiff and Appellant, v. JOSEPH PADILLA et al., Defendants and Respondents.

**390**

**COUNSEL**

Thomas M. O'Connor, City Attorney, and Robert A. Kenealey, Deputy City Attorney, for Plaintiff and Appellant.

James J. Reilly for Defendants and Respondents.

## OPINION

**MOLINARI, P. J.**—Plaintiff, City and County of San Francisco, appeals from a judgment in favor of defendants in an action seeking to abate a public nuisance and for injunctive relief against defendants.

Defendants, owners of real property located in San Francisco, filed an application in March 1964 with the central permit bureau of the department of public works of said city for a permit to construct a building containing 15 dwelling units and 15 off-street parking spaces. The parcel upon which said building was to be constructed was 145 feet long and 42 feet wide and was zoned under a classification known as R-3. The department of city planning approved the application for such building permit and a permit for the construction of said building was issued by the department of public works on July 21, 1964.

During the course of construction a building inspector discovered that additional rooms were being constructed in the basement area of said building. These rooms were not shown on the original application for the building permit. Defendants then applied for an alteration permit. As a condition for the issuance of such permit defendants agreed to and did record with the county recorder a statement specifically providing that the additional basement rooms were not to be used for dwelling purposes and that the building was not to be used for more than 15 dwelling units authorized under the original permit. Accordingly, a permit was issued for the construction of the additional basement rooms for storage purposes.

Sometime in 1967 a building inspector discovered that the subject area was being used for two dwelling units. Defendants were told to remove the two dwelling units or to file an application to legalize such units. Defendants then filed such an application with the central permit bureau of the department of public works and it was referred, among other city departments and bureaus, to the department of city planning for approval. In August 1967 the department of city planning advised defendants that it could not approve such application because it was in conflict with the density provisions of the city Planning Code. Defendants were advised, specifically, that said application exceeded by two units the number of dwelling units authorized by the original building permit and that no off-street parking was provided for the additional units as required by the city Planning Code. Defendants were also advised that since the issuance of the original building permit the Planning Code had been amended to limit a building on defendants' parcel to eight units and that with the construction of the proposed additional units the building would contain more floors than permitted by the Planning Code. Defendants were further advised that they should seek a variance

from the requirements of the Planning Code pursuant to the procedures provided for variance in the Planning Code.

The department of city planning also communicated its disapproval to the department of public works. Based on such disapproval the department of public works denied the application for the construction of the additional two dwelling units. Defendants then appealed such denial to the board of permit appeals (hereinafter referred to as "the Board"). After a hearing, the Board, on November 6, 1967, overruled the denial of the alteration permit by the department of public works and directed that department to grant and issue such permit upon the stipulation that copper "sprinklering" be concealed as recommended by the San Francisco Fire Department and that permits be obtained for the electrical and plumbing work.

The findings of fact upon which the Board's decision is predicated indicate that its decision was based on a site inspection and its "opinion" that overruling the denial of the "permit would not be inimical to the public health, safety and welfare of the people of San Francisco." The findings acknowledged that the "Disapproval of the permit by the Zoning Administrator was based on the objections that the legalization of the two units would be contrary to the density requirements of the City Planning Code and, secondly, insufficient parking facilities." The findings then recite that upon the site inspection the members of the Board ascertained that five tenants did not own cars; that, therefore, ample parking spaces existed; and that a number of other dwellings in the immediate area had no parking facilities whatsoever. With respect to the matter of density, the findings recite that ". . . it was our judgment that many of the older structures in the neighborhood exceeded the density requirements of the Code and to deny the appeal on this basis would be an unwarranted penalization of the property owner." The "findings" then conclude that the "Failure of the Board to act in this case would cause the property owner undue financial hardship" and that "The structure, a modern three story apartment house, constructed in 1964, is a definite asset to the district, . . ."

On February 21, 1968, plaintiff city filed an action seeking to abate, as a public nuisance, the maintenance of said alleged illegal dwelling units in defendants' building, and to enjoin such maintenance and continued use, on the ground that said units violated the provisions of the city Planning Code. In their answer defendants denied generally the allegations of the complaint, pleaded affirmatively the proceedings before the Board and its decision, and asserted, affirmatively, that such decision was final and was res judicata in the instant action.

At the trial, in addition to the facts hereinabove set out, evidence was adduced through the testimony of defendant Florence Padilla that the subject additional basement rooms were being occupied as dwelling units. It was also stipulated by defendants' counsel that defendants did not seek to obtain a permit from the department of public works following the decision of the Board and that the permit which the Board ordered should be granted had not been issued.

The court denied the relief prayed for in plaintiff's complaint, stating as its reasons that the Board had jurisdiction to order the issuance of the subject permit and that the existence of a public nuisance had not been established. The court also made "Findings of Fact and Conclusions of Law." The court found that defendants had applied to the department of public works for the subject alterations permit which said department denied; that said denial was appealed to the Board which overruled the denial upon findings of fact reciting essentially that defendants would be unwarrantedly penalized by such a denial because other older structures in the neighborhood exceeded the density requirements of the Planning Code and because such denial would cause defendants undue financial hardship; and that the Board had ordered the department of public works to issue such permit. The court then concluded that the identical issues in the action before it were passed upon and decided by the Board; that such Board had jurisdiction to pass upon the application for the subject permit; that the Board's decision was final; that plaintiff did not avail itself of the proper legal procedure by which to review the decision of the Board; that the decision of the Board was res judicata; that the trial court, accordingly, did not have jurisdiction over the subject matter of the instant action; and that no public nuisance had been established. Judgment was thereupon entered in favor of defendants.

Plaintiff contends that the decision of the Board was not a bar to the complaint for injunction, and that it is entitled to an injunction pursuant to the primary duty of the zoning administrator to enforce the provisions of the Planning Code. Underlying this contention is the assertion that defendants are violating the provisions of the Planning Code and that they do not have a valid permit for the construction of the subject dwelling units. With respect to the Board's decision it is asserted that it did not have subject matter jurisdiction to hear and approve the application for the alteration permit because, in essence, defendants were seeking a variance from the strict application of the Planning Code and the procedures set out in the San Francisco Charter (hereinafter the "Charter")

and the Planning Code for obtaining such a variance were not complied with.[1]

In order to place these contentions in proper focus we proceed to consider briefly the pertinent code and Charter provisions of the City and County of San Francisco.[2]

Under the Public Works Code all applications for the construction and alteration of a building must be filed with the central permit bureau of the department of public works, and upon the approval of all interested city departments and bureaus the central permit bureau is required to issue the permit applied for. (Art. 1, §§ 1 and 2.) Pursuant to the provisions of the city Planning Code no application for a building construction or alteration permit can be approved by the department of city planning, nor can such a permit be issued by any city department which would authorize the use or change in any use of land or building contrary to the provisions of the Planning Code. (§ 110.) It is further provided in the Planning Code that any permit which is issued and is not in conformity with the provisions of that code is null and void. (§ 309, subd. (a).)

With respect to the granting or denying zoning variances we observe that, by virtue of section 117.3 of the Charter and section 302, subdivision (d) of the Planning Code, the initial determination as to whether a variance should be granted or denied is vested in the zoning administrator, who is empowered to grant such a variance only upon a finding that the conditions of these enactments have been satisfied. The 'procedures to be followed providing for the filing of an application, a hearing, and notice of hearing to abutting owners are specified in other sections of the Planning Code. (§ 302, subds. (a), (b) and (c).)

---

[1]In its petition for a rehearing, which we granted, plaintiff asserts for the first time that the Board did not have jurisdiction to hear the appeal of defendants from the denial of the alteration permit because their appeal was filed too late. We are requested, pursuant to Evidence Code section 452, subdivision (c), to take judicial notice of certain documents which plaintiff asserts establish this contention. It does not appear from the record that this alleged infirmity was called to the attention of the Board or the court below. In order for us to take judicial notice of the subject documents it would be necessary, since these documents were not before the court below or called to its attention, to afford defendants a reasonable opportunity to indicate to us whether we should take judicial notice of such documents. (Evid. Code, § 459, subds. (c) and (d); *Smith* v. *Hatch*, 271 Cal.App.2d 39, 49 [76 Cal. Rptr. 350].) In view of the conclusion hereinafter reached that the Board did not have jurisdiction of the subject matter because of other jurisdictional infirmities, we need not consider whether judicial notice should be taken of the subject documents and we do not take such notice.

[2]The record discloses that the trial court took judicial notice of the pertinent code provisions of the San Francisco Municipal Code and the Charter of said city and county. This court takes judicial notice of each matter properly noticed by the trial court and each matter the trial court was required to notice. (Evid. Code, § 459.)

Under section 39 of the Charter "Any applicant for a permit . . . who is denied such permit . . . by the department authorized to issue same . . . may appeal to the board of permit appeals." That section provides further, in pertinent part, that "Such board shall hear the applicant, . . . or other interested parties, as well as the head or representative of the department issuing or refusing to issue such . . . permit, . . . After such hearing . . . it [the Board] may concur in the action of the department authorized to issue such . . . permit, or, by the vote of four members, may overrule the action of such department and order that the permit . . . be granted, . . ."

In the exercise of its appellate jurisdiction under section 39 of the Charter, the Board is invested with complete power to hear and determine the entire controversy before it, is free to draw its own conclusions from the conflicting evidence before it and in the exercise of its independent judgment in the matter to affirm, modify or overrule the action of the subordinate agency or official at the primary level. (*City & County of S.F.* v. *Superior Court,* 53 Cal.2d 236, 248 [1 Cal.Rptr. 158, 347 P.2d 294]; *Lindell Co.* v. *Board of Permit Appeals,* 23 Cal.2d 303, 313-314 [144 P.2d 4]; *Iscoff* v. *Police Commission,* 222 Cal.App.2d 395, 409 [35 Cal.Rptr. 189]; *Board of Permit Appeals* v. *Central Permit Bureau,* 186 Cal.App.2d 633, 640 [9 Cal.Rptr. 83]; *Cow Hollow Improvement Club* v. *Board of Permit Appeals,* 245 Cal.App.2d 160, 169 [53 Cal.Rptr. 610].) De novo review by the Board is contemplated by this section of the Charter. (*Russian Hill Improvement Assn.* v. *Board of Permit Appeals,* 66 Cal.2d 34, 38 [56 Cal.Rptr. 672, 423 P.2d 824].)

In considering action taken by the Board when it is exercising its review powers under section 39 of the Charter, the Board is bound by the relevant law as enunciated by the Charter, ordinances, and controlling court decisions, and it must exercise a lawful discretion applied to the facts in evidence. (*City & County of S.F.* v. *Superior Court, supra,* 53 Cal.2d 236, 250-251; *Board of Permit Appeals* v. *Central Permit Bureau, supra,* 186 Cal.App.2d 633, 640; and see *Plum* v. *City of Healdsburg,* 237 Cal.App.2d 308, 317 [46 Cal.Rptr. 827].) However, when it does act within the purview of section 39 a presumption arises that the existence of the necessary facts supporting its action has been ascertained and found. (*City & County of S.F.* v. *Superior Court, supra,* at p. 251; *Board of Permit Appeals* v. *Central Permit Bureau, supra,* at p. 642.)

The Board has also been empowered, by virtue of section 117.3 of the Charter, to hear and determine appeals relating to the applications for zoning variances. Accordingly, the determination of the zoning administrator is not final if an appeal is taken therefrom to the Board pursuant

to section 117.3 of the Charter, as implemented by section 303 of the Planning Code. (See *Cow Hollow Improvement Club* v. *Board of Permit Appeals, supra,* 245 Cal.App.2d 160, 169.) Upon such appeal the Board may approve, disapprove, or modify the ruling, decision or determination appealed from, "or, in lieu thereof, make such other additional determination as it shall deem proper in the premises, subject to the same limitations" as are placed upon the zoning administrator or by the Charter and the Planning Code. (§ 117.3 of the Charter; § 303, subd. (d) of the Planning Code; see *Cow Hollow Improvement Club* v. *Board of Permit Appeals, supra,* at p. 168.) The Board's jurisdiction, insofar as zoning matters are concerned, is not, however, governed by section 39 of the Charter but is controlled exclusively by section 117.3 of the Charter and sections 302 and 303 of the Planning Code. Accordingly, within the purview of these sections, the Board, in hearing appeals from the zoning administrator's decisions relating to the granting or denying of a variance, "is entitled to exercise its own independent judgment but in doing so *can only grant a variance if it finds that the conditions specified in these sections are satisfied.*"[3] (Italics added; *Cow Hollow Improvement Club* v. *Board of Permit Appeals, supra,* at p. 170.) In this respect section 117.3 of the Charter is more restrictive than the discretionary power conferred upon the Board by section 39 of the Charter.

 Adverting to the questions presented on this appeal, we observe, initially, that plaintiff did not challenge the validity or propriety of the Board's decision and order pursuant to the direct review provided for in Code of Civil Procedure section 1094.5. That statute provides, in essence, for the review of administrative orders or decisions by a petition for writ of mandate. Instead of seeking such review plaintiff city filed an action seeking to abate, as a public nuisance, the maintenance of said alleged illegal dwelling units in defendants' building, and to enjoin such maintenance and continued use, on the ground that said units violated the provisions of the city Planning Code. In their answer defendants pleaded,

---

[3]The conditions specified in section 302, subdivision (d) of the Planning Code, as authorized by section 117.3 of the Charter, are as follows: ". . . (1) that there are exceptional or extraordinary circumstances or conditions applying to the property involved, or to the intended use of the property, that do not apply generally to other property or uses in the same class of district; (2) that owing to such exceptional or extraordinary circumstances the literal enforcement of specified provisions of the Code would result in practical difficulty or unnecessary hardship; (3) that the variance is necessary for the preservation of a substantial property right of the petitioner possessed by other property in the same class of district; (4) that the granting of the variance will not be materially detrimental to the public welfare or materially injurious to the property or improvements in the vicinity; and (5) that the granting of such variance will be in harmony with the general purpose and intent of this Code and will not adversely affect the Master Plan."

among other things, that the decision of the Board was final and that it was res judicata in the instant action.

 Under the doctrine of res judicata parties to an action are precluded from relitigating a cause of action litigated by them or their privies if that cause of action has been finally determined by a court of competent jurisdiction, or from litigating any issue necessarily decided in such litigation. (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co.*, 58 Cal.2d 601, 604 [25 Cal.Rptr. 559, 385 P.2d 439]; *Solari* v. *Atlas-Universal Service, Inc.*, 215 Cal.App.2d 587, 592 [30 Cal.Rptr. 407]; *O'Hagen* v. *Board of Zoning Adjustment*, 19 Cal.App.3d 151, 161 [96 Cal.Rptr. 484].) "The application of the principle of res judicata in a given case depends upon the affirmative answer to the questions whether the issue decided in the prior adjudication was identical to the one presented in the subsequent litigation, whether there has been a final judgment on the merits and whether the party against whom the principle is invoked was a party or in privity with a party to the prior adjudication. [Citations.]" (*O'Hagen* v. *Board of Zoning Adjustment, supra*, at p. 162.)

 Plaintiff urges that the principle of res judicata is not applicable because the Board did not have jurisdiction of the subject matter and, therefore, that its order had no validity and was subject to collateral attack. We agree with plaintiff's contention that the Board did not have jurisdiction of the subject matter. We, therefore, need not discuss whether the usual necessary elements of the doctrine of res judicata are present, i.e., whether the issue decided by the Board was identical to the one presented to the court below, whether there has been a final judgment[4] and whether there was the required privity between the parties. We are, however, concerned with whether the Board's assumption of jurisdiction was a determination of subject matter jurisdiction so as to become res judicata. In this connection we observe that the record before us is silent as to whether the issue of the Board's jurisdiction was raised in the proceedings before it or as to whether jurisdiction was actually contested in such proceedings.

In the early case of *Rogers* v. *Cady* (1894) 104 Cal. 288 [38 P. 81], we find this pertinent language: "The judgment of a court may always be impeached for want of jurisdiction, and when the judgment is upon a subject matter over which the court could, under no circumstances, have

---

[4]Plaintiff contends that the Board's order was not final at the time the instant action was filed, heard and decided because the statute of limitation for an action in mandamus to review the Board's action had not expired. (See *Allen* v. *Humboldt County Board of Supervisors*, 220 Cal.App.2d 877, 884-885 [34 Cal.Rptr. 232]; Code Civ. Proc., § 343.)

any jurisdiction, the objection may be taken at any time when such judgment is invoked. . . . A court cannot, by any decision that it may make, either implied or direct, acquire jurisdiction over a subject matter that has been denied to it by the constitution, and whenever it appears upon the face of a judgment that it was rendered upon a subject over which the court could have no jurisdiction such judgment has no validity." (At pp. 291-292.) In *Rogers,* a case involving the commencement of an action for the foreclosure of lands in a county in which the lands were not located where the Constitution required that such an action must be commenced where the lands are situated, the Supreme Court observed that "There is no occasion in the present case to invoke a presumption of jurisdiction from the fact of its exercise. The want of jurisdiction appears upon the face of the judgment." (At p. 292.)

Witkin suggests that the broad declaration of the *Rogers* case "must be deemed repudiated by the later decisions" which favor the view that a determination of subject matter jurisdiction may become res judicata even where the jurisdictional issue was not raised in the first proceeding. (1 Witkin, Cal. Procedure (2d ed. 1971) § 238, at p. 780; § 237, at p. 778, and cases there cited which include *Bank of America* v. *McLaughlin etc. Co.* (1940) 40 Cal.App.2d 620, 627 [105 P.2d 607]; *Estate of Estrem* (1940) 16 Cal.2d 563, 570 [107 P.2d 36]; *Estate of Robinson* (1942) 19 Cal.2d 534, 538 [121 P.2d 734]; *Nelson* v. *Oro Loma Sanitary Dist.* (1950) 101 Cal.App.2d 349, 353 [225 P.2d 573]; *Frazier* v. *Wasserman* (1968) 263 Cal.App.2d 120, 124 [69 Cal.Rptr. 510].)

In *Bank of America* and *Frazier,* prior jurisdictional issues determined by bankruptcy courts were held to be res judicata. In the former, the issue whether the bankrupt was a "farmer" under the terms of the Bankruptcy Act and whether the bankrupt was the owner of property it claimed to be farming, was tendered and determined in the bankruptcy court; in the latter, the collateral attack was made only as to the determination by the bankruptcy court that it had jurisdiction over the affairs of the bankrupt and no showing was made that the prior judgment was void on its face or that federal law was not complied with in the institution of the bankruptcy proceedings. In *Estrem,* a motion to set aside an order admitting a will to probate on the ground that the probate court did not have jurisdiction because the decedent had left no property in Alameda County, as alleged in the petition for probate of the will, was denied on the basis that the facts establishing such jurisdiction were found by the court in the original proceedings in which the time for appeal had elapsed and in which all adverse parties were properly served with notice and had the opportunity to present their objections. *Robinson* is a case similar to *Estrem.* In

*Nelson,* a determination by an assessing board that it had jurisdiction to make a reassessment was held to be res judicata where the landowners affected did not appear and protest the reassessment hearings. The rationale of *Nelson* is that under the statutes the board was required to determine that it had jurisdiction, i.e., that its jurisdiction was dependent on a fact which it was required to ascertain and settle by its decision. (101 Cal. App.2d at p. 358.)

The principle respecting the invoking of res judicata in situations involving jurisdiction over the subject matter is stated thusly in the Restatement of Judgments (§ 10): "(1) Where a court has jurisdiction over the parties and determines that it has jurisdiction over the subject matter, the parties cannot collaterally attack the judgment on the ground that the court did not have jurisdiction over the subject matter, unless the policy underlying the doctrine of res judicata is outweighed by the policy against permitting the court to act beyond its jurisdiction. [¶] (2) Among the factors appropriate to be considered in determining that collateral attack should be permitted are that (a) the lack of jurisdiction over the subject matter was clear; (b) the determination as to jurisdiction depended upon a question of law rather than of fact; (c) the court was one of limited and not of general jurisdiction; (d) the question of jurisdiction was not actually litigated; (e) the policy against the court's acting beyond its jurisdiction is strong."

Witkin takes cognizance of the factors mentioned in the Restatement and rationalizes that the holding of the *Rogers* case can be explained in terms of four of these five factors.[5] (1 Witkin, Cal. Procedure (2d ed. 1971) § 238, pp. 778-780.) We deem it expedient and proper to consider these factors as applied to the instant case in view of the doubt cast by the later cases upon the applicability in a given case to the broad declarations of the *Rogers* case.

In the present case the jurisdictional issue is one of law and the lack of jurisdiction is clear on the face of the administrative record. The Board's order which recites that it is made pursuant to both sections 39 and 117.3 of the Charter is predicated upon a determination clearly indicating that the purport of the Board's decision is to grant defendants a variance. In order to grant such a zoning variance the Board was required to have jurisdiction of the subject matter entitling it to grant or deny a zoning variance. Such jurisdiction is obtained through section 117.3 of the Charter providing for the hearing and determination of appeals relating to

[5]The factor not applicable is that having to do with the limited jurisdiction of the tribunal. In *Rogers* this factor was not present because the first court was one of general jurisdiction.

applications for zoning variances. As pointed out above, the predicate for such an appeal is an initial determination by the zoning administrator granting or denying the zoning variance following an application therefor, a notice of hearing to abutting owners, a hearing, and specific findings, all as required by the Planning Code and as countenanced by the Charter. None of the underlying procedures were initiated or undertaken by defendants. In the absence of such compliance and the making of a determination by the zoning administrator there was no subject matter of which the Board could take jurisdiction. (See *Mumaw* v. *City of Glendale,* 270 Cal.App.2d 454, 460 [76 Cal.Rptr. 245].)

We observe, further, that the Board is an administrative agency of limited jurisdiction. ■ Administrative agencies "have only such powers as have been conferred on them, expressly or by implication, by constitution or statute." (*Ferdig* v. *State Personnel Bd.,* 71 Cal.2d 96, 103 [77 Cal.Rptr. 224, 453 P.2d 728]; *United States F. & G. Co.* v. *Superior Court,* 214 Cal. 468, 471 [6 P.2d 243].) ■ "An administrative agency, therefore, must act within the powers conferred upon it by law and may not validly act in excess of such powers. [Citations.]" (*Ferdig* v. *State Personnel Bd., supra,* at p. 104.) Accordingly, it is well settled that "when an administrative agency acts in excess of, or in violation, of the powers conferred upon it, its action thus taken is void." (*Ferdig* v. *State Personnel Bd., supra,* at p. 104. See *Aylward* v. *State Board etc. Examiners,* 31 Cal.2d 833, 839 [192 P.2d 929].) In view of these principles it is apparent that it is the strong policy of the law, because of the limited jurisdiction of agencies such as the Board, to require that such agencies proceed within their jurisdiction.

■ Finally, we note that although the record is unclear whether the jurisdictional issue was actually litigated before the Board, the indications are that it was not in view of a silent record and the circumstance that none of the parties contend or urge that it was litigated.

We accordingly conclude, upon a consideration of the Restatement's suggested limitations on the application of the doctrine of res judicata, that plaintiff should have been permitted to collaterally attack the subject matter jurisdiction of the Board in the court below and that it may do so on this appeal. (See *Mumaw* v. *City of Glendale, supra,* 270 Cal. App.2d at p. 460.) We reach this conclusion upon a determination that the policy supporting the doctrine of res judicata is outweighed by the strong policy against allowing an administrative agency such as the Board to act without jurisdiction.

As already pointed out, when an administrative agency acts without or in

excess of its jurisdiction, or in violation of the powers conferred upon it, its action thus taken is void. Here the decision of the Board was clearly rendered without jurisdiction of the subject matter and, therefore, is void and not binding on plaintiff, the central permit bureau or the department of city planning.

It is clear that defendants have attempted to circumvent the zoning variance procedures by applying directly to the central permit bureau for a building alteration permit. It is equally clear that defendants could not expect that such a permit would be issued because it would be the bureau's legal duty to refuse to issue a permit that was in violation of the Planning Code. (See *Plum* v. *City of Healdsburg, supra,* 237 Cal.App.2d 308, 317.) Such denial may not be used with impunity to invoke the provisions of section 39 of the Charter under which the Board has broad discretionary powers and thereby circumvent the more restrictive appellate powers provided for in section 117.3 of the Charter providing for appeals in zoning variance matters. In sum, section 39 of the Charter, utilized by defendants here, did not confer jurisdiction upon the Board. Since plaintiff was not precluded by the doctrine of res judicata, it was entitled to show in support of its complaint for injunction that defendants were keeping, maintaining and using the subject dwelling units in violation of the Planning Code and that such keeping, maintenance, and use constituted a public nuisance. ■ Violations of the Planning Code constitute a public nuisance and may be enjoined by an action for injunction. (*City etc. of San Francisco* v. *Burton,* 201 Cal.App.2d 749, 756-757 [20 Cal.Rptr. 378]; *City of Stockton* v. *Frisbie & Latta,* 93 Cal.App. 277, 289-290 [270 P. 270]; *City of San Mateo* v. *Hardy,* 64 Cal.App.2d 794, 797 [149 P.2d 307]; see Civ. Code, §§ 3479, 3480; and see *City of Bakersfield* v. *Miller,* 64 Cal.2d 93, 99-100 [48 Cal.Rptr. 889, 410 P.2d 393].) In *Burton* it was held that the violation of a valid zoning ordinance itself constitutes a sufficient showing to permit enforcement by an injunctive proceeding. (At p. 757.)

We observe, moreover, that the Planning Code specifically contemplates that any use in violation of its provisions is a public nuisance since the code empowers the zoning administrator to enforce the provisions of the Planning Code and that among the methods of enforcement is the maintenance, through the city attorney, of an action for injunction to restrain or abate as a public nuisance any use or feature in violation of the Planning Code. (§§ 307, 309.)

■ A review of the record in the present case undisputably discloses that defendants are in violation of the Planning Code and that they are in violation of the permit that provided that the area now being used for dwelling units be used only for storage purposes. We perceive, too, that

defendants' application to the central permit bureau for a permit for the construction of said dwelling units was properly rejected since such a permit, if issued, would have been null and void as violative of the Planning Code. Defendants' only recourse was to seek a variance from the provisions of the Planning Code but they did not choose to do so.

We also observe that, in any event, defendants have not attempted to comply with the Board's order. That order not only provided that a permit be issued but also provided that such permit be issued on the conditions that the copper sprinkling pipes be concealed as required by the fire department and that permits be obtained for the electrical and plumbing work.

At the time of the instant trial on January 29, 1969, defendants admitted that they had not obtained the subject permit and that they had taken no steps to have it issued. No justification was advanced for the failure to obtain such permit nor was it contended by defendants that they had complied with the conditions imposed by the Board for the issuance of the permit. Accordingly, even if we were to assume that the Board was justified in ordering the issuance of the permit, no such permit was in fact issued. The order of the Board for the issuance of the permit did not constitute a permit. The Board cannot grant a permit but may only direct the department of public works to issue it. (See *Russian Hill Improvement Assn.* v. *Board of Permit Appeals, supra,* 66 Cal.2d 34, 43.) We do not believe that defendants can rely with impunity on the Board's order as being tantamount to a permit. To the contrary, they were required within a reasonable time to obtain a valid permit and to perform the conditions imposed for its issuance. In the absence of such a permit, the continued maintenance and use of the subject dwellings were clearly in violation of the Public Works Code and the Planning Code. Such violations constituted a public nuisance which could be enjoined by an action for injunction.

We find nothing in the record which requires us to order a new trial. The record clearly shows that only one judgment is proper under the law and the undisputed facts, i.e., a judgment for plaintiff.

The judgment is reversed with directions that a judgment be entered in favor of plaintiff against defendants for the relief prayed for in the complaint.

Sims, J., and Elkington, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied April 6, 1972.