[Civ. No. 36312. First Dist., Div. One. July 27, 1976.]

SAVE OUR SKYLINE et al., Plaintiffs and Respondents, v.
BOARD OF PERMIT APPEALS et al.,
Defendants and Respondents;
NOB HILL PARK, LTD., Real Party in Interest and Appellant.

**COUNSEL**

Crosby, Heafey, Roach & May, Thiel, Bolton, Cornblum & Johnson and Marshall Cornblum for Real Party in Interest and Appellant.

Charles Cline Moore for Plaintiffs and Respondents.

No appearance for Defendants and Respondents.

**OPINION**

**WEINBERGER, J.**\*—This appeal is from a judgment of the Superior Court in and for the City and County of San Francisco granting a peremptory writ of mandate directing the San Francisco Board of Permit Appeals (herein "Board") and Central Permit Bureau (herein "Bureau") to revoke a building permit issued to appellant Nob Hill Park, Ltd., a limited partnership. The permit related to the proposed erection of a 24-story building to contain 102 residential units and 116 off-street parking spaces on Nob Hill in San Francisco (herein "project"). The trial court found that the Board, when it approved the issuance of the permit, failed to consider the provisions of the California Environmental Quality Act of 1970 and the 1972 amendments thereto, Public Resources Code section 21000 et seq. (herein "CEQA"). Save Our Skyline and Terry Covert, who were the successful petitioners below, are the respondents herein. The Board and Bureau, who were parties below, have not appealed.

The original application for the permit to construct the project was filed with the Bureau on May 31, 1972. While the application was being reviewed by various agencies in San Francisco concerned with the issuance of building permits the California Supreme Court decided *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247 [104 Cal.Rptr. 761, 502 P.2d 1049], which held that CEQA's requirements, particularly the requirement of an environmental impact report (EIR),

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

applied to private activities for which a government permit is necessary. Accordingly, an EIR was prepared for the subject project and the city planning commission scheduled and advertised a hearing thereon for December 14, 1972. The planning commission also decided to conduct a discretionary review of the project and scheduled that hearing for the same date.

Meanwhile the California Legislature enacted the 1972 amendments to CEQA (Stats. 1972, ch. 1154), commonly known as A.B. 889, which became effective as emergency legislation on December 5, 1972. Pertinent provisions of A.B. 889 became Public Resources Code section 21065, subdivision (c), which defines "project" as "Activities involving the issuance to a person of a . . . permit . . . by one or more public agencies," and section 21171 which provides in part as follows: "This division [CEQA] . . . shall not apply to the issuance of any . . . permit . . . for any project defined in subdivision (c) of Section 21065 . . . until the 121st day after the effective date of this section." The 121st day after the effective date was April 5, 1973. (*Plan for Arcadia, Inc.* v. *City Council of Arcadia* (1974) 42 Cal.App.3d 712, 717 [117 Cal.Rptr. 96].) In view of the moratorium, appellant and the planning commission staff agreed on December 14, 1972, that consideration of the EIR by the commission was no longer necessary and appellant declined the offer to have the report considered notwithstanding the moratorium. However, the discretionary review hearing was held as scheduled and on January 4, 1973, the planning commission disapproved the project. This decision was appealed to the Board, and after hearings on February 5 and 26, 1973, the Board reversed the commission and ordered the Bureau to issue the permit. A request for a rehearing was denied by the Board on March 12, 1973.

On March 23, 1973, the Bureau, pursuant to the order of the Board, issued a permit to appellant to construct the project. On the permit it was stated, "This permit issued subject to appeal within 10 days to Board of Permit Appeals. Incur no expense, under this permit, until right of appeal has lapsed." On April 2, 1973, respondents filed an appeal to the Board from the Bureau's issuance of the permit. On April 9, 1973, the Board heard and denied the appeal, and prepared a "Decision" in which it found, inter alia, "The proposed project will be beneficial to the City of San Francisco, and to the Nob Hill area in that it will (a) provide jobs during construction of the proposed project, (b) increase the tax base, (c) provide residential living accommodations for present residents and

those who desire to become residents of San Francisco." An EIR was not considered by the Board.

A request for rehearing was denied on May 14, 1973, and on August 31, 1973, the respondents sought a writ of mandate to revoke the permit on the sole ground that the Board had not complied with the provisions of CEQA. The trial court decided in favor of respondents on the basis that the project was not approved until April 9, 1973, after the moratorium authorized by Public Resources Code section 21171 had ended, and that the Board was required to consider the EIR which it failed to do.

· Appellant contends that the project was exempt from CEQA because it was approved prior to April 5, 1973, the date when the moratorium expired. Appellant's position is that the project was approved at the latest on March 23, 1973, when the permit was issued by the Bureau pursuant to the order of the Board.

In *Friends of Lake Arrowhead* v. *Board of Supervisors* (1974) 38 Cal.App.3d 497, 514 [113 Cal.Rptr. 539], the court approved the language in an article in the State Bar Journal which stated, with regard to Public Resources Code section 21171, that " 'the determinative point is whether the project has been approved by the public agency prior to the end of the moratorium period. If so, then an EIR prepared in accordance with the Act's requirements will not be needed.' " The parties to the instant appeal are agreed that the problem presented is: When was the permit for the subject project approved?

"Approval" within the meaning of CEQA is defined in the California Administrative Code, title 14, section 15021 as follows: "Approval means the decision by a public agency which commits the agency to a definite course of action in regard to a project intended to be carried out by any person. *The exact date of approval of any project is a matter determined by each public agency according to its rules, regulations, and ordinances.* Legislative action in regard to a project often constitutes approval. [¶] In connection with private activities, approval occurs upon the earliest commitment to issue or the issuance by the public agency of a discretionary contract, grant, subsidy, loan, or other form of financial assistance, lease, permit, license, certificate, or other entitlement for use of the project." (Italics added.) To determine the date of approval of the subject project we shall examine the pertinent rules, regulations, ordinances and charter provisions applicable to the Board.

Section 3.651 of the Charter of the City and County of San Francisco (formerly § 39) provides in pertinent part: "Any applicant for a permit or license who is denied such permit or license by the department authorized to issue same, or whose license or permit is ordered revoked by any department, or any person who deems that his interests or property or that the general public interest will be adversely affected as the result of operations authorized by or under any permit or license granted or issued by any department, may appeal to the board of permit appeals. Such board shall hear the applicant, the permit-holder, or other interested parties, as well as the head or representative of the department issuing or refusing to issue such license or permit, or ordering the revocation of same. After such hearing and such further investigation as the board may deem necessary, it may concur in the action of the department authorized to issue such license or permit, or, by the vote of four members, may overrule the action of such department and order that the permit or license be granted, restored or refused." It is clear that a right of appeal is granted to an applicant who is *denied* a permit or to a permit-holder whose permit is *revoked.* It is equally clear that a right of appeal is granted to "any person who deems that his interests or property or that the general public interest will be adversely affected as the result of operations authorized by or under any permit or license granted or issued by any department." The charter makes no distinction between a permit granted or issued as the result of *discretionary* action by the department issuing it and one issued on orders of the Board, which has been held to be merely a *ministerial* act. (*Board of Permit Appeals* v. *Central Permit Bureau* (1960) 186 Cal.App.2d 633 [9 Cal.Rptr. 83].)

In the instant case the real party in interest whose application was denied filed an appeal with the Board. That appeal was successful and the Bureau was directed to, and after the Board denied a petition for rehearing, did issue a conditional permit. A timely appeal was then filed by respondents who had previously voiced objection to the application but had not theretofore been parties to the action. It was the Board's decision on that appeal which was disapproved by the trial court and is before us for review.

Section 8 of part III, article I of the San Francisco Municipal Code provides that appeals to the Board must be taken within 10 days from the making or entry of the order or decision from which the appeal is taken. The section further provides that the Board "shall fix the time and place of hearing, which shall not be less than five (5) nor more than

fifteen (15) days after the filing of said appeal," and that, "*Pending decision by the Board of Permit Appeals, the action from which an appeal is taken of such department, board, commission, officer or other person shall be suspended.*" (Italics added.)

■ Appellant contends that the project was "approved" within the meaning of California Administrative Code, title 14, section 15021, on either March 12, 1973, when the Board decision of February 26, 1973, ordering "that the said permit application be approved" allegedly became final, or on March 23, 1973, when the permit was issued by the Bureau. This contention ignores the above quoted provision of San Francisco Municipal Code, part III, article I, section 8, providing that "Pending decision by the Board of Permit Appeals, the action from which an appeal is taken . . . shall be suspended." The March 23 issuance was appealed to the Board and the action of the Bureau in issuing the permit was suspended by local ordinance. As noted heretofore the site permit itself stated, "Incur no expense, under this permit, until right of appeal has lapsed."

Appellant takes issue with the view expressed by the trial court in its opinion and notice of intended decision that it was conceded that the Board's review on April 9 was in the nature of a de novo review and that the Board could have disapproved the project and denied the permit. Appellant now contends that this concession was never made and that the hearing on April 9, 1973, was not a de novo hearing wherein the Board could exercise its discretion to then disapprove the permit which was issued pursuant to its order.

We find that the attorney appearing on behalf of the Board before the trial court did concede, albeit reluctantly, that the Board had authority to disapprove a permit issued pursuant to its order, and the contention that the Board's review was not de novo is clearly erroneous.

In *City and County of San Francisco* v. *Padilla* (1972) 23 Cal.App.3d 388, 395 [100 Cal.Rptr. 223], this court, discussing the authority of the Board, held: "In the exercise of its appellate jurisdiction under section 39 of the Charter [now § 3.651] the Board is invested with complete power to hear and determine the entire controversy before it, is free to draw its own conclusions from the conflicting evidence before it and in the exercise of its independent judgment in the matter to affirm, modify or overrule the action of the subordinate agency or official at the primary level. [Citations.] De novo review by the Board is contemplated by this

section of the Charter." It was further noted at page 402 that "The order of the Board for the issuance of the permit did not constitute a permit. The Board cannot grant a permit but may only direct the department of public works to issue it."

In *Lindell Co.* v. *Board of Permit Appeals* (1943) 23 Cal.2d 303, 310 [144 P.2d 4], the court noted that San Francisco, ". . . by appropriate charter and ordinance provisions, has set up a plan of procedure regulating the issuance of permits for the erection of buildings within its territorial limits, undeniably a 'municipal affair' over which it has supreme control," and stated (at p. 314) that "In view of such elaborate provision for the hearing on appeal it cannot be argued that the designated appellate board—the Board of Permit Appeals—was in any way limited or restricted in its consideration of the instant case, . . ." With reference to a rehearing before the Board, "The pertinent municipal charter and ordinance provisions . . . give the board the power so to avail itself of the opportunity to undo and correct any error in judgment it deems it may have made as the result of a misconception of the merits of the appeal." (*Id.,* at p. 320.)

In the instant case the position taken by appellant on appeal, namely, that the hearing on April 9, 1973, was not de novo is different from the view expressed by its counsel at the hearing before the Board on February 5, 1973, as follows: "Now, I guess the basic question, what am I asking you to do. I want you to put me in exactly the same place as I would have been in had the Department of City Planning not undertaken discretionary review, which means that if you would overrule the Planning Commission, I would go back to complete, check on my plans in which event, a permit would be issued, in which event, the Comstock and all others so inclined have a right to appeal to this Board." This, coupled with appellant's failure to object to the language on the permit itself regarding the right to appeal and its failure to question the Board's jurisdiction to hear the appeal on April 9, 1973, strongly suggests that the Board's power to conduct a de novo hearing was not only well established in the reported decisions but was so understood by the appellant. In *Russian Hill Improvement Assn.* v. *Board of Permit Appeals* (1967) 66 Cal.2d 34 [56 Cal.Rptr. 672, 423 P.2d 824], a case similar in many respects to the instant case, the court was dealing with a permit purporting to authorize the construction of a building which would rise to over twice the maximum height limit permitted by an ordinance duly enacted before but not to become effective until four days *after* the

Bureau issued it. There, as here, the permit contained the statement that it was issued subject to appeal to the Board. It was so appealed and the Board approved by disallowing the appeal. There the newly enacted ordinance was in effect when the Board heard the appeal just as, in the case at bench, the moratorium on the requirement for an EIR on the project had expired before the hearing date. The Supreme Court was concerned with *when* the permit in *Russian Hill* was granted, the appellant there contending that the permit was lawfully granted by the Bureau in time to immunize the proposed project from the operation of the newly enacted height limitation. We are concerned with *when* the subject project was approved, the appellant here contending that the approval became final either on March 12, 1973, when the Board denied appellant's request for a rehearing or at the latest on March 23, 1973, when the permit was issued by the Bureau. In both cases the Board was mandated by the superior court to revoke permits lawfully issued by the Bureau on the basis that they had been improperly approved by the Board.

Appellant in the instant case points out correctly that the issue before the Supreme Court in *Russian Hill* was whether the permit there in question was "lawfully granted" within the meaning of section 150 of the City Planning Code of San Francisco whereas we are concerned with whether the permit here issued was "approved" within the meaning of CEQA before the expiration of the moratorium contained in Public Resources Code section 21171. Despite this difference in the two cases it is our conclusion that the cited case discusses fully the major issues presented in the present appeal and is controlling.

In *Russian Hill,* the court noted: "Since *de novo* review by the Board of Permit Appeals is an integral part of the entire permit procedure, the board, as an agency entrusted with broadly discretionary power, would ordinarily be bound to apply the zoning ordinances in force at the time of the *final* administrative decision, rather than the ordinances in effect at the time of preliminary proceedings before the permit bureau. [¶] . . . As defendants interpret the section, it clothes a permit with statutory immunity the moment such a permit is *issued* by a lawful order of the permit bureau, notwithstanding any change in the governing law pending *de novo* review of the permit application by the Board of Permit Appeals. We have concluded, however, that section 150 requires no such departure from traditional principles of administrative law since that section contemplates only the protection of those permits which have

attained finality in the administrative process." (*Russian Hill Improvement Assn.* v. *Board of Permit Appeals, supra,* 66 Cal.2d 34 at pp. 38-39; original italics.) Footnote 11 on page 39 reads: "A permit achieves such finality only when the right to invoke the discretionary reviewing authority of the Board of Permit Appeals has been exhausted. Thus a permit issued by the permit bureau becomes final at the conclusion of the 10-day period following the order which issued that permit, if such order has not been appealed by that time. Otherwise, the permit becomes final only at the conclusion of the 40-day period following the filing of a timely appeal. (Municipal Code, pt. III, art. I, §§ 8, 14; *Lindell Co.* v. *Board of Permit Appeals, supra,* 23 Cal.2d 303, 323.)" On page 41 the court notes further: "Even after a permit has been lawfully issued by the bureau, the Board of Permit Appeals necessarily retains discretionary power to order that the permit be denied because of a pending change in the law. At most, therefore, the lawful *issuance* of a permit by the bureau can confer a *conditional* immunity, hardly the kind of shield contemplated by a statute designed to fix the rights of a permittee upon a certain date." (Original italics.) The Supreme Court concludes at page 46: "Under traditional principles of administrative law, the Board of Permit Appeals in its *de novo* review is bound to apply the zoning ordinances in effect at the time of its final decision, not those in force at the time of preliminary proceedings before any subordinate agency."

We conclude that the words "approval," "issuance," or "commitment to issue" of a discretionary permit used in California Administrative Code, title 14, section 15021, when viewed in the light of permit procedures established by the rules, ordinances and charter provisions of the City and County of San Francisco contemplate only those permits which have attained *finality* in the administrative process. To paraphrase footnote 18 in *Russian Hill,* a contrary conclusion would abrogate the right of all interested parties to urge in formal hearings before the Board the *impropriety* of issuing a permit in conflict with an imminent change in the law, notwithstanding the *lawfulness* of issuing such a permit before the effective date of that change. (66 Cal.2d 34 at p. 41.)

Appellant contends that "approval" of the project, for the purposes of Public Resources Code section 21171, did not occur on April 9, 1973, when the Board denied the appeal, or on May 14, 1973, when respondents' request for a rehearing was denied, because the Board had no greater discretion to disapprove the permit than the Bureau had to issue it. This contention is without merit. *Lindell Co.* v. *Board of Permit*

*Appeals, supra,* 23 Cal.2d 303, is cited in support of appellant's contention but that case held that the Board, in its appellate jurisdiction, is an administrative tribunal empowered to exercise full discretion in passing upon the matter submitted for decision. At page 314 the court stated: "Certainly the Board of Permit Appeals, in reaching a decision in the matter, possessed at least the discretion which the Central Permit Bureau had . . . ." Since it has been established that in the instant case the Bureau exercised no discretion—its action was purely ministerial—it must follow that the Board was required by the charter to grant respondents a hearing and was empowered to exercise full discretion, not restricted in any manner by the fact that the same subject matter had been before the Board on an earlier occasion. The cause before the Board on April 9, 1973, was not a rehearing of a previous appeal; it was a de novo hearing of a different appeal by different parties.

■ Appellant's final contention is that California Administrative Code, title 14, section 15070, subdivision (b)(3) exempts the subject project from CEQA. This section applies to a project for which one *discretionary* permit has been granted governmental approval before, and another or additional discretionary approval after April 5, 1973. In the instant case only one permit was issued and was given final discretionary approval after April 5, 1973. Accordingly, section 15070, subdivision (b)(3), is not applicable and the project is not exempt from CEQA. The judgment granting a writ of mandate was properly entered and is affirmed.

Molinari, P. J., and Sims, J., concurred.