Filed 3/29/24

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| VICHY SPRINGS RESORT, INC.,<br>      Plaintiff and Appellant,<br>v.<br>CITY OF UKIAH et al.,<br>      Defendants and Respondents;<br>UKIAH RIFLE AND PISTOL CLUB, INC.,<br>      Real Party in Interest. | A165345, A167000<br><br>(Mendocino County Super. Ct. No. SCUK-CVPT 18-70200) |

Real Party in Interest Ukiah Rifle and Pistol Club, Inc. (Club) operates a shooting range on land it leases from the City of Ukiah (City). The property, although owned by the City, is located in an unincorporated area of Mendocino County (County). Half a mile from the Club lies Vichy Springs Resort, Inc. (Vichy), a mineral springs resort and spa. Faced with uncertainty about whether or to what extent the City or the County has regulatory authority over the Club's activities, Vichy sued both entities regarding the Club's planned demolition of its existing main shooting range and construction of a new range (Project), which Vichy contended would have significant environmental impacts such as lead contamination and increased

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part I.C and parts II–V.

noise and traffic. While the case was pending in the trial court, the Club completed the Project—Vichy did not ask the court to enjoin it—and the City and the County entered into an Agreement for Shared Exercise of Land Use and California Building Code Authority under the Joint Exercise of Powers Act, Government Code sections 6500 et seq, (the Joint Powers Agreement or Agreement) with respect to the Club's activities. Ultimately, after several rounds of motions, the trial court entered judgment in favor of the City and the County on Vichy's Second Amended Petition for Writ of Mandate and Complaint for Declaratory and Injunctive Relief (Petition). The trial court then denied Vichy's motion for attorneys' fees under Code of Civil Procedure section 1021.5, rejecting Vichy's argument that the lawsuit was the "catalyst" for the establishment of the Joint Powers Agreement.

On appeal, Vichy contends the trial court erred by (1) sustaining without leave to amend demurrers to the causes of action alleging that the City and the County failed to comply with the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.; future undesignated statutory references are to this code) and their respective General Plans and local ordinances; (2) granting the Club's motion to strike allegations related to its lease with the City; and (3) granting the City's and the County's motion for judgment on the pleadings on Vichy's claim for declaratory relief on the ground that it was mooted by the Joint Powers Agreement. Vichy also contends the court erred in denying its motion for attorneys' fees.

We find no error insofar as the trial court sustained the demurrer to the second and third causes of action against the City (for alleged violations of local law in issuing a building permit), and insofar as it found that the claim for declaratory relief was moot. We conclude, however, that the trial

2

court erred in granting the motion to strike, and that the Petition sufficiently alleges that both the City and the County violated CEQA and the County abused its discretion in determining it had no regulatory authority over the Club's Project. Accordingly, we reverse the judgment and remand for further proceedings. In light of our reversal of the judgment, we will dismiss Vichy's appeal of the order denying the motion for attorneys' fees.

## BACKGROUND

In January 2018, Vichy sued to (1) set aside the building permit issued by the City in December 2017 authorizing the demolition of the Club's existing main shooting range and construction of a new range, and (2) enjoin operation of all unauthorized and improperly authorized activity at the Club until the City and the County have properly exercised their regulatory authority over the Club's use of the property and issued the necessary permits. The petition described the Project as follows: "In order to accommodate the increase in use, the Gun Club is undertaking to demolish the main range and rebuild with a different and modern structure." The petition also detailed an alleged "pattern and practice of failing to regulate" the Club by both the City and the County, and sought a declaration that the property is subject to land use regulation by both entities.

As amended, the Petition alleges that the County erroneously determined that the City's ownership of the property rendered the Club's activities immune from the County's regulatory authority under Government Code sections 53090 and 53091, which (as relevant here) exempt cities from a county's building and zoning ordinances.[1] According to the Petition, the

---

[1] Government Code section 53091, subdivision (a), provides: "Each local agency shall comply with all applicable building ordinances and zoning ordinances of the county or city in which the territory of the local agency is

3

Club's use of the property is for a private purpose, and the City's immunity from County regulation does not extend to city-owned property located outside its territorial jurisdiction that is leased to a private entity for a private purpose. With respect to the City, the Petition alleges that it has no *statutory* authority to regulate uses of property outside of its jurisdiction, but that the City's lease with the Club enables it to condition any improvements the Club wishes to make on compliance with the City's and the County's local plans and ordinances. It also alleges that the City accepts the County's position that the County's General Plan and zoning and building codes do not apply to the Club's activities, and that the City therefore does not require the Club to comply with the County's laws.

The first cause of action alleges CEQA violations by the County and the City. According to the Petition, the County violated CEQA by erroneously determining that it had no regulatory responsibility for the Project and, as a result of that determination, allowing it to proceed without review or interruption. It alleges that the City's violations consisted in issuing a building permit outside of its jurisdiction, improperly determining that the Project was not subject to CEQA, and failing to require the Club to obtain approvals, including a building permit and use permit, from the County.

The second cause of action alleges that the County violated section 20.204.015(B) of its zoning code, which Vichy contends prohibited the Club from resuming its nonconforming use after demolishing the main range, by refusing to take any action against the Project, and by improperly allowing the City to issue a building permit and certificate of occupancy in the

---

situated." However, Government Code section 53090, subdivision (a), excludes cities, among other public entities, from the definition of "local agency."

4

County's jurisdiction.  It alleges that the City violated the Ukiah City Code by issuing a building permit and certificate of occupancy outside of its jurisdiction.

The third cause of action alleges that the City unlawfully failed to consider the City's and the County's general plan policies when it issued a building permit to the Club.

Under the first three causes of action, the Petition seeks a writ of mandate directing the City to set aside the building permits and both the City and the County to comply with CEQA and their respective local laws, and an injunction prohibiting the continued use of the Club property until all necessary review has been conducted and required permits have been issued.

Finally, the fourth cause of action seeks a declaration that the Club is subject to land use regulation by the County and the City.

While the action was pending, and in response to a 2014 request by the County, the Attorney General issued Opinion 14–403, clarifying that "a city's private lessee is exempt under [Government Code] section 53090, provided that the lessee's use of the property primarily serves the city's public purposes, but that it is not exempt where the lessee's use of the property primarily serves the lessee's private interests."  (80 Ops. Cal. Atty. Gen. 88 (2018).)  The opinion is therefore consistent with the Petition's contention that a private lessee who uses city-owned property for a private purpose does not receive intergovernmental immunity, although it does not decide whether the Club is using the property primarily for a private purpose, as the Petition alleges.

In May 2021, the County demurred to the first and second causes of action.  It argued that the first cause of action failed to state a claim against the County for violation of CEQA because there was no "project" subject to

5

CEQA when Vichy was complaining solely of the County's failure to act. It argued that the second cause of action failed because a writ of mandate does not lie to compel the County to take specific action to enforce its zoning laws. The Club, joined by the City, filed a demurrer to the first, second, and third causes of action, arguing that they were all mooted by the Project's completion. The Club also filed a motion to strike various allegations from the Petition, in which the City likewise joined. The Court sustained the demurrers without leave to amend, and granted the motion to strike.[2]

The City and the County later entered into the Joint Powers Agreement. They agreed that (1) "the County shall exercise land use jurisdiction over the Gun Club's use of the Gun Club Property in accordance with the County's duly adopted zoning ordinance as it currently reads in Title 20 of the Mendocino County Code or as it may be amended or superseded in the future"; (2) "[t]he City rather than the County shall continue to assure that any improvements constructed on the Gun Club Property comply with the procedures and substantive requirements of the Model Codes adopted by the City pursuant to Division 3, Chapter 1 of the Ukiah City Code ('UCC') as it currently reads or as it may be amended or superseded in the future"; and (3) "[t]he City and the County shall agree upon a process by which the City can verify that County has made all necessary zoning review, prior to the City issuing a permit." The Agreement provides that either party may withdraw from it with specified notice.

Thereafter, the City filed a motion for judgment on the pleadings, which the County joined, seeking dismissal of the fourth cause of action on

---

[2] There is no written order sustaining the Club's demurrer. Both Vichy and the Club rely on the trial court's oral ruling at the hearing, where it stated that it would "grant the demurrer to the second-amended petition filed by the pistol club as to causes of actions 1, 2, and 3."

6

the ground that it had been rendered moot by the entry of the Agreement between the County and the City. The trial court agreed and entered judgment in favor of the City and the County. Vichy timely filed a notice of appeal.

Vichy subsequently filed its motion for attorneys' fees. The trial court denied the motion and Vichy timely filed a second notice of appeal. At the request of the parties, we ordered the appeals consolidated for all purposes.[3]

## DISCUSSION

The judgment was entered after the trial court sustained demurrers to the first three causes without leave to amend and then granted a motion for judgment on the pleadings as to the fourth cause of action on the ground that it was moot. We review de novo the trial court's order sustaining the demurrers and exercise our independent judgment as to whether the Petition states a cause of action as a matter of law. (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.) We accept as true all material facts properly pled and matters which may be judicially noticed, but disregard contentions, deductions, or conclusions of fact or law. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) We "give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Ibid.*) Because a motion for judgment on the pleadings is equivalent to a demurrer, it is governed by the same standard of review. (*People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777.)

"Issues of justiciability, such as mootness, are generally reviewed de novo." (*Robinson v. U-Haul Co. of California* (2016) 4 Cal.App.5th 304, 319.) However, insofar as the trial court's rejection of the "public interest exception

---

[3] The County's request for judicial notice is denied. The documents included in the request are all already included in the record on appeal.

7

to mootness is an exercise of the court's 'inherent discretion' [citation], [this] determination [is] arguably . . . subject to an abuse of discretion standard of review." (*Ibid.*)

## I.  CEQA Claim

The purpose of CEQA is to protect and maintain California's environmental quality.  (§ 21000.)  As explained in the CEQA Guidelines,[4] "CEQA is intended to be used in conjunction with discretionary powers granted to public agencies by other laws.  [¶] [] CEQA does not grant an agency new powers independent of the powers granted to the agency by other laws.  [¶] [] Where another law grants an agency discretionary powers, CEQA supplements those discretionary powers by authorizing the agency to use the discretionary powers to mitigate or avoid significant effects on the environment when it is feasible to do so with respect to projects subject to the powers of the agency."  (CEQA Guidelines, § 15040.)

CEQA establishes "a three-tier process to ensure that public agencies inform their decisions with environmental considerations."  (*Muzzy Ranch Co. v. Solano County Airport Land Use Com.* (2007) 41 Cal.4th 372, 379–380.)  In this case, we are concerned only with the first tier, which requires that "an agency conduct a preliminary review to determine whether an activity is subject to CEQA."  (*Id.* at p. 380.)  "An activity that is not a 'project' as defined in the Public Resources Code (see § 21065) and the CEQA Guidelines (see § 15378) is not subject to CEQA."  (*Ibid.*)  As relevant here, section 21065 defines a "Project" as "an activity which may cause either a direct physical change in the environment, or a reasonably foreseeable indirect physical

---

[4] We use the term "CEQA Guidelines" to refer to the regulations for the implementation of CEQA authorized by the Legislature under section 21083 and codified in title 14, section 15000 et seq. of the California Code of Regulations.

8

change in the environment, and which is any of the following:  [¶] . . . [¶] (c) An activity that involves the issuance to a person of a lease, permit, license, certificate, or other entitlement for use by one or more public agencies."[5]  However, because CEQA regulates the use of discretionary powers, it does not apply to a project that requires only "ministerial" approval.  (§ 21080, subd. (b)(1); *Mission Peak Conservancy v. State Water Resources Control Bd.* (2021) 72 Cal.App.5th 873, 880.)  "A project is discretionary when an agency is required to exercise judgment or deliberation in deciding whether to approve an activity." (*Protecting Our Water & Environmental Resources v. County of Stanislaus* (2020) 10 Cal.5th 479, 489.)

"When a governmental agency . . . has violated CEQA, '[t]he mechanism through which the remedy or remedies are implemented [to correct the CEQA violation] is a peremptory writ of mandate.' " (*McCann v. City of San Diego* (2023) 94 Cal.App.5th 284, 292.)  Under section 21168.5, "In any action or proceeding, other than an action or proceeding under Section 21168, to attack, review, set aside, void or annul a determination, finding, or decision of a public agency on the grounds of noncompliance with this division, the inquiry shall extend only to whether there was a prejudicial abuse of discretion.  Abuse of discretion is established if the agency has not proceeded in a manner required by law or if the determination or decision is not supported by substantial evidence."

### A. Mootness

As an initial matter, the Club, joined by the City, argues that the CEQA claim is moot because there is no effective relief the court can order

---

[5] Under section 21065, subdivision (a), a project also includes an activity directly undertaken by any public agency.  No party has suggested that the Project meets this definition simply because the City owns the land on which construction will occur.

now that the Project has been completed. " ' "It is well settled that an appellate court will decide only actual controversies and that a live appeal may be rendered moot by events occurring after the notice of appeal was filed. We will not render opinions on moot questions or abstract propositions, or declare principles of law which cannot affect the matter at issue on appeal." ' [Citation.] 'A case is moot when the decision of the reviewing court "can have no practical impact or provide the parties effectual relief." ' [Citation.] [¶] 'Stated differently, moot cases "are '[t]hose in which an actual controversy did exist but, by the passage of time or a change in circumstances, ceased to exist.' " ' [Citation.] 'The pivotal question in determining if a case is moot is therefore whether the court can grant the plaintiff any effectual relief.' " (*Committee for Sound Water & Land Development v. City of Seaside* (2022) 79 Cal.App.5th 389, 405.)

We disagree that the claim is moot.[6] In *Bakersfield Citizens for Local Control v. City of Bakersfield* (2004) 124 Cal.App.4th 1184, 1203–1204, the

---

[6] We observe, however, that despite scattered uses of the word "justiciable," Vichy's opening brief did not clearly address whether the first three causes of action were mooted by the Project's completion. Moreover, in its reply brief, it wrote, "Notably, the superior court's Orders did not find the first three causes of action were moot," pointing to the court's order sustaining the *County*'s demurrer, which did not raise a mootness argument. We find this statement disingenuous. As noted earlier, there was no written order sustaining the Club's demurrer, which challenged the first three causes of action based on mootness; the parties rely instead on the court's oral ruling. In that ruling, the court expressly found that there is "no longer a justiciable issue" because "the event around which this lawsuit is constructed" has been "over for approximately three years." Because Vichy is required to overcome all grounds for the trial court's decision, its failure to address mootness in a substantive way in the opening brief arguably forfeits the claim of error. (See, e.g., *Sonoma Luxury Resort LLC v. California Regional Water Quality Control Board, North Coast Region* (2023)

court rejected Bakersfield's argument that the appeal, which challenged project approvals for two retail shopping centers, was rendered moot by the completion of the project. The court held that while the shopping centers were complete and several businesses were already in operation, the appeal was not moot because, among other reasons, "even at this late juncture full CEQA compliance would not be a meaningless exercise of form over substance." (*Id*. at p. 1204.) The court explained, "The City possesses discretion to reject either or both of the shopping centers after further environmental study and weighing of the projects' benefits versus their environmental, economic and social costs. As conditions of reapproval, the City may compel additional mitigation measures or require the projects to be modified, reconfigured or reduced. The City can require completed portions of the projects to be modified or removed and it can compel restoration of the project sites to their original condition." (*Ibid*; see also *Woodward Park Homeowners Assn v. Garreks, Inc.* (2000) 77 Cal.App.4th 880, 888 [challenge to approval of car wash without preparation of an EIR is not moot, despite completion of project, where "decision upholding the [court's] order directing [the] preparation of an EIR could result in modification of the project to mitigate adverse impacts or . . . removal of the project altogether"].)

The same is true here. The Petition alleges that the Project will increase use of the range and that, as a result, the contamination of the water flowing off site, noise, and traffic will all increase. According to the Petition, the County could require the Club to alleviate environmental

---

96 Cal.App.5th 935, 941; *LNSU #1, LLC v. Alta Del Mar Coastal Collection Community Association* (2023) 94 Cal.App.5th 1050, 1070–1071; *Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 729, fn. 1.) Given the fragmented state of the record and the Club's and the City's failure to argue forfeiture, however, we exercise our discretion to consider the issue.

impacts by engaging in a proactive lead removal program, implementing a pollution prevention plan, using lead-free ammunition at the main range until the Club demonstrates that it is no longer contributing lead to Sulfur Creek and the Russian River, and limiting the hours of use and allowed uses at the main range. Thus, while the Project may be complete, mitigation measures could still be imposed to reduce or avoid the significant environmental impacts alleged in the Petition. The permit and certificate of occupancy issued by the City could be revoked and held in abeyance while the County completes its review. (See, e.g., *Save Our Skyline v. Board of Permit Appeals* (1976) 60 Cal.App.3d 512, 514, 522 [affirming writ of mandate requiring revocation of building permit for failure to comply with CEQA].)

The Club relies on *Parkford Owners for a Better Community v. County of Placer* (2020) 54 Cal.App.5th 714 (*Parkford*) and *Santa Monica Baykeeper v. City of Malibu* (2011) 193 Cal.App.4th 1538 (*Baykeeper*), but they are both distinguishable. In *Parkford*, the court found that the appellant's CEQA claims, which challenged the expansion of self-storage facility without preparation of an EIR, were rendered moot by completion of the expansion project. (*Parkford,* at pp. 716–717.) Unlike in the present case, however, although the appellant argued summarily in the trial court that the County could still " 'modify the project or impose mitigation measures, or require that the property be restored,' " it did not elaborate and it did not reassert that argument in its briefing on appeal. (*Id*. at p. 725.) Similarly, in *Baykeeper*, in holding that the completion of a park project rendered appellant's CEQA claim moot, the court noted that although appellant claimed that " 'the project can be modified and the construction impacts can be ameliorated,' " it had not suggested how that could be accomplished "now that the project is

12

finished and operating." (*Baykeeper,* at p. 1549.)  Here, Vichy has included allegations about post-completion mitigation measures in its Petition.

We are also not persuaded by the Club's argument that we should find the claims moot because Vichy did not seek a preliminary injunction staying construction during the pendency of the litigation.  Doubtless it would have been preferable for Vichy to ask for temporary injunctive relief; the progress of a project can impact the feasibility of mitigation measures and in some cases can indeed mean there is no longer anything the court could reasonably order as a remedy.  Although the Club knew Vichy was challenging the City's determination that the Project was not subject to CEQA or qualified for an exemption, we cannot fault it for proceeding with construction given Vichy's inaction.  But we see no legal basis for concluding that a petitioner's earlier failure to seek injunctive relief requires a court to find a CEQA claim moot in a situation in which effective relief remains available.

The cases the Club cites on this subject, *Baykeeper, supra,* 193 Cal.App.4th 1538 and *Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, do not support such a broad proposition.  In *Baykeeper,* the court noted that the appellant had failed to take steps to maintain the status quo pending resolution of its claims by seeking injunctive relief or a stay, doing so only once the case reached the court of appeal and construction was nearly complete.  (*Baykeeper,* at pp. 1547–1548.)  But as discussed above, appellants in that case offered only conclusory arguments regarding what relief might be available.  In *Wilson & Wilson v. City Council of Redwood City, supra,* 191 Cal.App.4th 1559, the court held that appellant's action was moot because construction had been completed prior to entry of judgment in the trial court and no injunctive relief was sought.  That case, however, was a reverse validation action under Code of Civil Procedure

13

section 863, not a petition for writ of mandate challenging the approval of a project in violation of CEQA.  (*Id.* at p. 1567.)  The trial court's judgment invalidated resolutions and development agreements, but "did not order the City to take any corrective action."  (*Id.* at p. 1571.)  Although the court rejected the appellant's argument that the developer had proceeded with construction at its own risk, it did not consider any argument that the trial court could or should have ordered mitigation measures notwithstanding the completion of construction.  (*Id.* at pp. 1579–1580.)

Finally, the Club argues that the possible mitigation measures alleged in the Petition do not relate to the harms caused by the Project, and that Vichy is improperly attempting to obtain environmental review of the Club's use of the *entire* facility through its claims regarding the Project.  The Club suggests, for example, that the Petition is "silent on how lead-free bullets or annual reclamation efforts would mitigate the discrete construction project at issue."  This argument, however, ignores the allegation in the Petition that the Project will increase use of the facility, which would in turn result in increased bullets.  (Cf. *Berkeley Keep Jets Over the Bay Committee v. Board of Port Com'rs* (2001) 91 Cal.App.4th 1344, 1382 [EIR for airport expansion project did not adequately consider potential noise impact of increased nighttime flights].)  Because this appeal follows the trial court's decision sustaining demurrers, we cannot find the claim moot based on factual challenges to the mitigation measures alleged in the Petition, although the Club remains free to raise those issues later on.

## B. The County

The Petition alleges that (1) the County's local ordinances required the Club to obtain a discretionary use permit from the County, and that because the Club's Project would have reasonably foreseeable significant

14

environmental impacts, the County's discretionary authority over the Project required CEQA review; (2) Vichy filed complaints with the County in January 2017 and November 2017 asserting that the Club was constructing a new facility without having obtained necessary permits or complied with CEQA, and both complaints were closed without enforcement based on the County's determination that the Project is within the sole jurisdiction of the City; and (3) the County's failure to exercise its regulatory authority was based on its mistaken belief that the Club was immune from regulation under Government Code sections 53090 and 53091. Accordingly, the Petition alleges that the County failed to proceed in the manner required by law by maintaining a "blanket policy of no CEQA enforcement against the Gun Club." We agree with Vichy that these allegations are sufficient to state a cause of action for violation of CEQA.

Again, section 21168.5 applies to an action "to attack, review, set aside, void or annul a determination, finding, or decision of a public agency on the grounds of noncompliance with" CEQA. Vichy is attacking the County's determination that it did not have regulatory responsibility for the Club's Project, in the absence of which the County cannot have any CEQA obligations. Because the County's alleged decision did not rest on any provision of CEQA, and instead allegedly misapplied intergovernmental immunity statutes, arguably Vichy's challenge to it is not "on the grounds of noncompliance with" CEQA. But we think that narrow reading of section 21168.5 would be overly formalistic when Vichy is complaining of the County's resulting failure to follow any of CEQA's requirements. (Cf. *Central Delta Water Agency v. Department of Water Resources* (2021) 69 Cal.App.5th 170, 207 [ensuring agency's compliance with CEQA's substantive and

15

procedural requirements with respect to a particular environmental impact is the "primary right" of a CEQA cause of action].)

The County argues that the trial court correctly concluded that the Petition does not describe a "project" for purposes of CEQA because the County did not issue a permit. But the definition of a "project" under section 21065 does not require that a permit be issued. It requires that the proposed activity "involve[] the issuance to a person of a . . . permit." The Petition alleges, and the County does not dispute, that if the activity was subject to the County's authority, a permit would be required. Thus, the Petition sufficiently alleges that the Club purported to carry out a project within the meaning of CEQA.

The County also argues that CEQA applies only to project approvals, not to governmental inaction, and that the County did not approve the Project. The County explains: "At the time that work on the main range commenced, the County's request for an opinion had been submitted to the Attorney General's Office and the Gun Club was on notice that the County was seeking a formal Attorney General opinion on whether County zoning ordinances applied to Gun Club activities on City property. The Gun Club, however, appears to have decided to commence work without waiting for that opinion and without obtaining or seeking a use permit from the County. This unusually bold choice exposed the Gun Club to potential enforcement action, penalties, and other adverse consequences if its conduct was ultimately determined to be illegal. The County, however, was neither required to nor capable of conducting environmental analysis of a third party's decision to start work without County approval." The County argues that, because it has not approved the Club's Project, any claimed violation of CEQA is not ripe.

16

The County's explanation, however, conflicts with the Petition's allegations. The Petition alleges that the County declined to regulate the Club's activities based on its incorrect conclusion that it had no authority to do so. Consistent with this allegation are documents attached to the Petition showing that the County closed two complaints Vichy submitted about the Project. The first document, from April 2017, stated that Vichy's complaint was closed pending advice from County counsel about which entity was responsible for issuing permits. The second, from December 2017, stated that the complaint was being closed because "[t]his is the jurisdiction of City of Ukiah per lease agreement." For purposes of a demurrer, we must take as true the allegation that the County determined that the Project was not subject to CEQA review.[7]

The County's reliance on *Center for Biological Diversity v. Department of Conservation, etc.* (2019) 36 Cal.App.5th 210, 226–227, for the proposition that a CEQA challenge is not ripe before approval of the project is misplaced. In that case, the CEQA challenge was not ripe because there was no project for the local agency's consideration. Here, however, the Petition alleges the existence of a project that the County determined was not subject to regulation. Whether that determination was correct is a question ripe for review. While the Club did not apply for a permit, doing so would have been

_____

[7] Because the County contends that it was waiting for the Attorney General's opinion before formulating a position, it does not offer any argument about whether in fact it possessed regulatory authority over the Project before entering into the Joint Powers Agreement. We assume for the purposes of our analysis that it did, but only because that is what the Petition alleges and no one has argued otherwise. Nothing in this opinion should be construed as adjudicating that question—or whether, as alleged in the Petition, the Club's use of the property was primarily for a private purpose.

17

an idle act so long as the County maintained it had no regulatory authority. In this unusual circumstance, the County's determination meant that the Project was allowed to proceed without environmental review, which directly conflicts with the stated purpose of CEQA.

For this reason, we likewise find unavailing the County's reliance on *Lake Norconian Club Foundation v. Department of Corrections & Rehabilitation* (2019) 39 Cal.App.5th 1044, which it cites when arguing that it cannot violate CEQA through inaction. In that case, the court held that the public agency's failure to repair a historic building was not a *project* subject to CEQA because "the failure to act is not itself an activity, even if, as may commonly be true, there are consequences, possibly including environmental consequences, resulting from the inactivity." (*Id.* at p. 1051.) The project at issue here, however, is not the County's inaction; it is the Club's demolition and construction of the main range. Because the County does not dispute that the Project would have been subject to its environmental review if the County had regulatory authority, the Petition properly alleges a violation of CEQA with its allegations that the County erroneously concluded it had no responsibility for issuing a discretionary permit that would have triggered its review obligations.

**C. The City**

The Petition alleges that the City violated CEQA (1) by issuing the building permit and concluding the Project was exempt from CEQA; and (2) by failing to require the Club to obtain project approvals, including a discretionary use permit, from the County before issuance of the building permits. We find that these allegations adequately state a CEQA claim.

First, we take a brief detour to address the trial court's order granting the Club's motion to strike, since it struck various allegations against the

18

City, including the allegation in the CEQA cause of action that the City must require the Club to obtain permits from the County. The threshold question is whether we should consider the stricken allegations in assessing whether the Petition states a CEQA claim against the City. We conclude that we should. While there may be circumstances in which a cause of action would fail on demurrer only after certain allegations are stricken for independent reasons, here the Club did not characterize its demurrer as dependent on resolving the motion to strike in its favor. On the contrary, it asked the court to grant the motion "[i]n the event the Court overrules the demurrer." Because the court sustained the demurrers without leave to amend, the motion to strike was moot and the court need not have addressed it at all. (See, e.g., *Salimi v. State Comp. Ins. Fund* (1997) 54 Cal.App.4th 216, 218, fn. 1.) That is reason enough for us to evaluate the Petition as if the motion to strike had not been granted.

However, because we are reversing in part the court's decision sustaining the demurrers, and the parties have briefed the propriety of the order granting the motion to strike, it is appropriate for us to consider it on its merits. A court may strike out "any irrelevant, false, or improper matter inserted in any pleading," or "all or any part of any pleading not drawn or filed in conformity with the laws of this state, a court rule, or an order of the court." (Code Civ. Proc., § 436, subds. (a), (b).) We review an order on a motion to strike for abuse of discretion, although to the extent it rests on a question of law, it is subject to our independent review. (*Abbott Laboratories v. Superior Court* (2020) 9 Cal.5th 642, 651; *Ruiz v. Musclewood Property Investments, LLC* (2018) 28 Cal.App.5th 15, 24.)

The Club moved to strike allegations on the ground that some of them had been ordered stricken from the prior complaint—the first amended

19

petition—without leave to amend, and others inconsistently alleged both that the City has no regulatory jurisdiction over property outside its territorial limits and that the City was required to regulate the Club under CEQA. The Club's previous motion to strike raised the same argument about inconsistent allegations, and also argued that allegations about the City's lease with the Club were irrelevant because Vichy lacked standing to enforce the lease and because the lease could not provide the City with discretionary regulatory authority in any event.

We agree with Vichy that there was no basis for the trial court to order allegations stricken for inconsistency. While a complaint may not plead inconsistent *facts*, it may plead inconsistent legal theories or causes of action. (*Berman v. Bromberg* (1997) 56 Cal.App.4th 936, 944–945.) The allegations about the City's regulatory authority, or lack thereof, are alternative theories of liability, not inconsistent facts.

We also agree with Vichy that the allegations about the lease were relevant to its legal theories. Vichy was not seeking to "enforce" the lease between the City and the Club, so its asserted lack of standing to do so is beside the point. The lease was legally relevant because Vichy alleged that it was the source of the City's regulatory authority over the Club. The Club argues that the lease is irrelevant because the City properly found that the Project was either not subject to CEQA or qualified for an exemption. But the Petition contests those findings; to rely on them as a basis for granting the motion to strike would put the cart before the horse. As we discuss next, the Club's arguments that the Project was exempt do not defeat the CEQA cause of action at the pleading stage, so they do not supply a valid reason to grant the motion to strike (and if they did defeat the cause of action, they

20

would have rendered the motion to strike moot, as previously noted).[8] Because there was no proper legal basis for granting the motion, the trial court abused its discretion in doing so.

The City found that the Project was not subject to CEQA because it was ministerial, or alternatively, that it was categorically exempt as the replacement of an existing structure that would not expand the current use of the property. (See CEQA Guidelines, §§ 15301, 15302.)[9] To start with the latter, the allegations of the Petition prevent us from concluding that the Project was categorically exempt. The City argues that the allegation that the Project would increase usage is "directly refuted" by the exhibits attached to the Petition. The attachments, however, which describe the Project as "one of the biggest projects in recent Club history," are silent as to increased usage and thus do not necessarily conflict with or negate the allegation in the Petition. Similarly, while the Club argues that the Petition alleges that the Project involved the demolition and replacement of an existing structure, that characterization is an oversimplification. The Petition alleges that the Project involved the construction "of a different and modern structure" that

---

[8] To the extent the trial court relied on the same grounds in granting the Club's motion to strike the allegations regarding the City's authority under the lease from the first amended petition, it similarly abused its discretion in doing so. (See Code Civ. Proc., § 472c, subd. (b) & (b)(3) ["An order granting a motion to strike a portion of a pleading where the order granting the motion to strike did not strike the entire pleading" is "open on appeal where an amended pleading is filed after the court's order"].)

[9] Section 15301 of the CEQA Guidelines exempts, among other things, the repair, maintenance, or minor alteration of existing structures "involving negligible or no expansion of existing or former use," and section 15302 exempts "replacement or reconstruction of existing structures and facilities where the new structure will be located on the same site as the structure replaced and will have substantially the same purpose and capacity as the structure replaced."

will "increase the use and capacity." For purposes of demurrer, we must take these allegations as true.

With respect to the City's finding that the Project was ministerial, Vichy argues that, even if the building permit would be ministerial if issued to a private landowner pursuant to the City's statutory authority, here it should be considered discretionary because the City, as the property's owner, did not have to allow the Club to undertake any improvements at all and could impose any conditions on the Project it saw fit. The parties have not identified any authority addressing whether an otherwise ministerial permit should be considered discretionary when it is issued to a lessee of government-owned property who does not have a right to construct any improvements without the lessor's (i.e., the government's) permission. But we think that the City's approval of the Project could be considered discretionary if the lease meant the City was under no obligation to allow the Club to make any improvements on the property or was free to impose its own conditions. A ministerial decision is one "involving little or no personal judgment by the public official as to the wisdom or manner of carrying out the project." (CEQA Guidelines, § 15369.) While we do not preclude the possibility that the City or the Club could show that the lease did not give City officials the requisite level of discretion, at this stage of the proceedings we cannot find that the scope of their permissible decision-making with respect to the Club's Project "involves only the use of fixed standards or objective measurements," with no room for "personal, subjective judgment in deciding whether or how the project should be carried out." (*Ibid.*)

Moreover, whether or not the building permit was ministerial, the Petition alleges that it was not the only permit the Project required, and there is no dispute that the County use permit would be discretionary. The

22

CEQA Guidelines define a project as including "the whole of an action, which has a potential for resulting in either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment." (CEQA Guidelines, § 15378.) Where a project is to be approved by more than one public agency, the CEQA Guidelines provide directions for how the environmental review should be conducted. (CEQA Guidelines, § 15050.) The public agency with the greatest responsibility for supervising or approving the project as a whole shall be designated the lead agency and the lead agency shall be responsible for preparing an EIR or negative declaration for the project. (CEQA Guidelines, § 15050, subd. (a), § 15051, subd. (b).) The parties have not addressed how these Guidelines apply to the Project here, but according to the Petition, there was no coordination between the City and the County apart from the County's legally erroneous disavowal of responsibility and the City's acceptance of that position. Neither the City nor the Club has established that the Project did not require a discretionary use permit from the County, or that the City was bound by the County's alleged misinterpretation of intergovernmental immunity statutes. Such arguments (or others) may be developed on remand, but on the record before us, to the extent the City's finding that the Project was ministerial rested on a conclusion that no use permit was required because the County lacked regulatory authority, it was legally unsound.

Accordingly, the trial court erred in sustaining the City's demurrer to the CEQA cause of action.

## II. Writ of Mandate (Violation of Mendocino and Ukiah Codes)

Under Code of Civil Procedure section 1085, subdivision (a), "A writ of mandate may be issued by any court to any inferior tribunal, corporation,

23

board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station." A writ of mandate "will issue against a county, city, or other public body." (*Venice Town Council, Inc. v. City of Los Angeles* (1996) 47 Cal.App.4th 1547, 1558.) " 'However, the writ will not lie to control discretion conferred upon a public officer or agency. [Citations.] Two basic requirements are essential to the issuance of the writ: (1) A clear, present and usually ministerial duty upon the part of the respondent [citations]; and (2) a clear, present and beneficial right in the petitioner to the performance of that duty[.]' [Citation.] [¶] Where a statute leaves room for discretion, a challenger must show the official acted arbitrarily, beyond the bounds of reason or in derogation of the applicable legal standards. [Citation.] Where only one choice can be a reasonable exercise of discretion, a court may compel an official to make that choice." (*California Correctional Supervisors Organization, Inc. v. Department of Corrections* (2002) 96 Cal.App.4th 824, 827; *Citizens for East Shore Parks v. State Lands Com.* (2011) 202 Cal.App.4th 549, 573 ["[T]he arbitrary or capricious standard applicable in traditional mandamus proceedings under Code of Civil Procedure section 1085, embrace[s] review for legal error"].)

### A. The County

The Petition alleges that (1) the Club's Project demolished an existing structure that had been authorized by a 1982 designation of non-conforming use by the County; (2) Mendocino County Code section 20.204.015(B) requires that once a nonconforming structure is "voluntarily demolished," the non-conforming use designation that was previously issued must be

24

reconsidered;[10] and (3) instead of reevaluating the nonconforming use, the County willfully ignored the Club's actions and failed to act altogether. The Petition alleges that provisions of the Mendocino Code create mandatory duties to enforce zoning laws, and that the County's continued reliance on "its unreasonable and arbitrary interpretation of Government Code §§ 53090 and 53091, despite recent Attorney General opinions" is an abuse of discretion "in view of the environmental harm caused by the Gun Club's activities."

On appeal, Vichy acknowledges that the County cannot be compelled to take any specific action to enforce its zoning laws, but argues that the County can and should be compelled to exercise its discretionary powers in some way. (See *Ellena v. Department of Ins.* (2014) 230 Cal.App.4th 198, 205 [if a public entity refuses to act, "mandate is available to compel the exercise of those discretionary powers in some way"]; *Sunset Drive Corp. v. City of Redlands* (1999) 73 Cal.App.4th 215, 222 ["A refusal to exercise discretion is itself an abuse of discretion"].)

Initially, the County counters that "even when the terms of the ordinance or statute appear, on their face, to require officials to pursue *all* violations," government entities retain "significant discretion" not subject to mandate. The County suggests that "any duty to enforce necessarily requires the official to exercise discretion in determining whether a violation has

---

[10] Mendocino County Code section 20.204.015(B) provides that "whenever a structure, the use of which does not conform with the regulations for the zone in which it is located, or a structure which does not comply with the standards of yard spaces, height of structures, distance between structures, parking, etc., prescribed in the regulations for the zone in which it is located shall be voluntarily razed, the structure shall not be restored except in full conformity with the regulations of the zone in which it is located, and the nonconforming use shall not be resumed." None of the respondents address this ordinance in their briefing.

occurred" and that "[e]ven where a responsible official subjectively believes that a zoning violation has occurred, they still may have discretion to pursue alternatives to enforcement." The County's arguments would have some force if the question were whether it could be compelled to act in a specific manner, i.e., declare the building a nuisance or commence enforcement proceedings. Here, however, the question is whether it can be compelled to "take some action" when the Petition alleges that it has refused to do anything based on a legally incorrect understanding of its authority.

The County disputes the allegation that it has taken no action, arguing that its "forbearance [of] enforcement while seeking legal guidance" was an appropriate and reasonable exercise of discretion in this instance. Once again, however, this argument exceeds the scope of our review on a demurrer. The Petition alleges that the County refused to regulate the Club's activities based on the incorrect conclusion that it had no authority or discretion to do so. Although the County has now accepted, under the Joint Powers Agreement, its authority to regulate the Club's use of the property, the record does not reflect that the County has, in fact, exercised that authority. Section 20.204.015(B) of the Mendocino County Code prohibits the resumption of a nonconforming use after a structure's demolition and reconstruction. The County does not contend that it has considered in any way the application of this provision—which its briefing does not mention—to the Club's current activities. Accordingly, the allegations in the Petition state a valid claim for relief that is not moot.

**B. The City**

Against the City, Vichy alleges that the building permit is void and should be set aside because the City has no authority to issue extraterritorial permits. According to the Petition, the issuance of the permit violates the

26

Ukiah City Code because the Code makes building regulations "effective within the city" and defines "jurisdiction" to mean the "City of Ukiah." The parties devote scant attention to this claim in their briefing.

The argument raised against this claim in the Club's demurrer was that, like the CEQA claim, it was rendered moot by the completion of construction. Vichy did not meaningfully address mootness in its opening brief, and in its reply, it argued only that the completion of construction did not moot the CEQA claim. We have agreed with that argument based on the alleged feasibility of mitigation measures under CEQA, but Vichy does not identify any comparable basis for finding that the second cause of action is not moot. Even putting aside the now-effective Joint Powers Agreement, an order directing the City to revoke a building permit on the ground that the City cannot issue such a permit extraterritorially—as opposed to enable a CEQA review—would have no practical effect long after construction is complete.

## III.   Writ of Mandate (Violation of Planning Laws)

The third cause of action, asserted only against the City, does not warrant extended discussion. Again, this claim alleges that, when the City issued the building permit, it failed to consider—or "there is no evidence" that it considered—its General Plan policies or those of the County, and on that basis seeks a writ directing the City to set the permit aside. We note that the Petition does not identify any provision of the Ukiah Code that requires consideration of General Plan policies, let alone the County's General Plan, before issuance of a building permit. In any event, as with the second cause of action against the City, Vichy fails to offer any meaningful argument that this claim was not mooted by the completion of construction. It has therefore failed to carry its burden to establish that the court erred in

sustaining the demurrer to this cause of action.  (See *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.)

## IV.    Declaratory Relief

"The purpose of declaratory relief is 'to set controversies at rest before they lead to repudiation of obligations, invasion of rights or commission of wrongs.' [Citation.]  It 'is to be used in the interests of preventive justice, to declare rights rather than execute them.' [Citation.]  To this end, Code of Civil Procedure section 1060, which authorizes actions for declaratory relief, provides in pertinent part:  'Any person . . . who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property . . . may, *in cases of actual controversy* relating to the legal rights and duties of the respective parties, bring an original action . . . in the superior court for a declaration of his or her rights . . . including a determination of any question of construction or validity arising under the instrument or contract.' . . . [¶]  The 'actual controversy' language in Code of Civil Procedure section 1060 encompasses a probable future controversy relating to the legal rights and duties of the parties.  [Citation.]  For a probable future controversy to constitute an 'actual controversy,' however, the probable future controversy must be ripe.  [Citation.]  A 'controversy is "ripe" when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made.' " (*Environmental Defense Project of Sierra County v. County of Sierra* (2008) 158 Cal.App.4th 877, 884–885.)

A claim for declaratory relief " 'becomes moot when some event has occurred which "deprive[s] the controversy of its life." [Citation.]  The policy behind a mootness dismissal is that "courts decide justiciable controversies and will normally not render advisory opinions." ' [Citations.]  The voluntary

28

cessation of allegedly wrongful conduct destroys the justiciability of a controversy and renders an action moot unless there is a reasonable expectation the allegedly wrongful conduct will be repeated." (*Center for Local Government Accountability v. City of San Diego* (2016) 247 Cal.App.4th 1146, 1157.) Notwithstanding this general rule, a court has the discretion to issue an opinion on the merits of a controversy, even though the dispute between the original parties has become moot by subsequent events, if the issue is one of broad public interest and is likely to recur. (*Save Stanislaus Area Farm Economy v. Board of Supervisors* (1993) 13 Cal.App.4th 141, 146–148.)

The Petition seeks "a declaration that the City owned property leased to the Gun Club is subject to land use regulations by the City, under its contracting powers, and the County's jurisdiction and a determination that there is no immunity under Government Code §53090 and 53091." Respondents' motion for judgment on the pleadings argued that the Joint Powers Agreement fully addresses which entity will enforce the applicable land use or zoning regulations as to this property, and therefore, there is no justiciable controversy remaining. In response, Vichy argued that the Joint Powers Agreement did not moot the legal controversy because it permits either side to withdraw from the agreement, and if that were to occur, the parties would return to the status quo ante. The trial court granted the motion. The court explained, "Here, the need for the declaratory and injunctive relief sought by petitioner has been addressed by the Joint Powers Agreement between the City and the County that was effectuated since this action was filed. The fact that one side or the other could at any point withdraw from the Agreement does not mean a current controversy exists. A future withdrawal could come with conditions or other agreements or be

29

based on events not currently present that could have no relationship to the current controversy. The situation that the Court would be presented with in the event of a withdrawal is too speculative to be the basis of a declaratory relief action at this time. To go forward with the declaratory relief cause of action considering the Joint Powers Agreement would mean the Court is acting as an advisory body which is an improper function for the Court to fulfill." The court also rejected Vichy's arguments that exceptions to the mootness doctrine were applicable in this case. The court found that "[b]ased on the record, it would be an unreasonable exercise of discretion to conclude that the controversy between the parties is *likely* to reoccur. The Joint Powers Agreement spells out the relative responsibilities of the City and the County which renders a future controversy of the type alleged in the petition possible, but not likely." Finally, the court found that the "[e]nforcement of land use and zoning regulations on this property is not an issue of broad public interest."

We agree that entry of the Joint Powers Agreement mooted Vichy's claim for declaratory relief. As noted, the Agreement requires both the County and the City to exercise regulatory authority over the property in a manner consistent with what Vichy alleged were their legal obligations. As such, there is no longer a justiciable controversy. Vichy's arguments to the contrary are not persuasive.

Vichy argues that its declaratory relief claim is not moot because "voluntary discontinuation of illegal practices does not remove the pending claims of illegality from judicial power or relieve the court of the duty of determining the validity of the claims, especially where the plaintiff alleges the behavior could recur." But while "there is no hard-and-fast rule that a party's discontinuance of illegal behavior makes injunctive relief against him

30

or her unavailable, . . . 'voluntary cessation of conduct may be a factor in a court's exercise of its equitable jurisdiction.' " (*Robinson v. U-Haul Co. of California*, *supra*, 4 Cal.App.5th at p. 315; *Artus v. Gramercy Towers Condominium Assn.* (2018) 19 Cal.App.5th 923, 930 ["[D]eclaratory relief is an equitable remedy and need not be awarded if the circumstances do not warrant"].) Where equitable relief " 'is sought solely to prevent recurrence of proscribed conduct which has, *in good faith* been discontinued, there is no equitable reason' " for the court to act. (*Robinson*, at p. 316; see also *Artus,* at p. 932 [declaratory relief was properly denied where defendant had made "good faith efforts" to comply with all procedures required by law to remedy prior deficiencies].) As the trial court concluded, there is no reason to doubt the good faith of the City and the County with respect to the Agreement, and thus, little reason to believe that either will withdraw from it.

Vichy also argues that the trial court should have recognized that the underlying issues were of general public interest because the petition included allegations of lead contamination and other significant environmental impacts. The trial court concluded, however, that the allegations of lead contamination "have nothing to do with the declaratory or injunctive relief sought" because the declaratory and injunctive relief requested does not relate to environmental contamination. The court did not abuse its discretion in concluding that the general public did not have an interest in the resolution of land use authority over the property, as contrasted with how that authority is exercised.

Finally, Vichy contends that the court abused its discretion in denying it leave to amend the fourth cause of action. Vichy argues, "Given that the [Joint Powers Agreement] was entered into after the Second Amended Petition was filed and that clear facts were articulated that could have

31

supported the fourth cause of action, the superior court's denial of the request for leave to amend was an abuse of discretion and should be overturned." The proffered facts, however, again relate to the ability of the County and the City to withdraw from the agreement. These facts, if alleged in an amended complaint, would not establish an actual controversy. As explained by the trial court, the likelihood of the parties' withdrawal from the Agreement is small and the circumstances of any such withdrawal are uncertain and speculative.

## V.    Attorneys' Fees

In appeal number A167000, Vichy challenges the postjudgment order denying its motion for attorneys' fees. The reversal of the judgment in appeal number A165345 requires us to dismiss this appeal as moot. (See *Krantz v. BT Visual Images* (2001) 89 Cal.App.4th 164, 167; *Doyle v. Board of Supervisors* (1988) 197 Cal.App.3d 1358, 1367.)

## DISPOSITION

The judgment is reversed and the matter remanded with directions to the trial court to deny the Club's motion to strike, and to overrule the demurrers to the first cause of action and the County's demurrer to the second cause of action. Appeal number A167000 is dismissed. Vichy shall recover its costs on appeal.

GOLDMAN, J.

WE CONCUR:

BROWN, P. J.
SMILEY, J. *

---

* Judge of the Superior Court of California, Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

| | |
|---|---|
| Trial Court: | Mendocino County Superior Court |
| Trial Judge: | Honorable Ann C. Moorman |
| Counsel for Plaintiff and Appellant: | BARTKIEWICZ, KRONICK & SHANAHAN, Jennifer T. Buckman and Kristin B. Peer |
| Counsel for Defendant and Respondent City of Ukiah: | David J. Rapport, City Attorney |
| Counsel for Defendant and Respondent County of Mendocino: | Christian M. Curtis, County Counsel, and Brina A. Blanton, Deputy County Counsel |
| Counsel for Real Party in Interest: | CANNATA, O'TOOLE & OLSON, Therese Y. Cannata, Michael Ching, Vincent Lee; LAW OFFICE OF DAVID M. KINDOPP and David M. Kindopp |